**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| _____ | ) | |
| KONINKLIJKE PHILIPS N.V., | ) | |
| U.S. PHILIPS CORPORATION, | ) | |
|  | ) | |
| Plaintiffs, | ) | C.A. No. 15-1125-GMS |
|  | ) | |
| v. | ) | JURY TRIAL DEMANDED |
|  | ) | |
| ASUSTEK COMPUTER INC., | ) | |
| ASUS COMPUTER INTERNATIONAL, | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |
|  | ) | |
| KONINKLIJKE PHILIPS N.V., | ) | |
| U.S. PHILIPS CORPORATION, | ) | |
|  | ) | |
| Plaintiffs, | ) | C.A. No. 15-1126-GMS |
|  | ) | |
| v. | ) | JURY TRIAL DEMANDED |
|  | ) | |
| HTC CORP., HTC AMERICA, | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |
|  | ) | |
| KONINKLIJKE PHILIPS N.V., | ) | |
| U.S. PHILIPS CORPORATION, | ) | |
|  | ) | |
| Plaintiffs, | ) | C.A. No. 15-1127-GMS |
|  | ) | |
| v. | ) | JURY TRIAL DEMANDED |
|  | ) | |
| VISUAL LAND, INC., | ) | |
|  | ) | |
| Defendant. | ) | |
| _____ | ) | |

|  |  |  |
|---|---|---|
| KONINKLIJKE PHILIPS N.V.,<br>U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 15-1128-GMS |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| SOUTHERN TELECOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

|  |  |  |
|---|---|---|
| KONINKLIJKE PHILIPS N.V.,<br>U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 15-1130-GMS |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| DOUBLE POWER TECHNOLOGY, INC.,<br>ZOWEE MARKETING CO., LTD., SHENZEN<br>ZOWEE TECHNOLOGY CO., LTD., | ) | |
| | ) | |
| Defendants. | ) | |

|  |  |  |
|---|---|---|
| KONINKLIJKE PHILIPS N.V.,<br>U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 15-1131-GMS |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| YIFANG USA, INC. D/B/A E-FUN, INC. | ) | |
| | ) | |
| Defendants. | ) | |

_____
                          )

KONINKLIJKE PHILIPS N.V.,      )
U.S. PHILIPS CORPORATION,     )
                          )

            Plaintiffs,    )   C.A. No. 15-1170-GMS
                          )

        v.            )   JURY TRIAL DEMANDED
                          )

ACER INC.,                )
ACER AMERICA CORPORATION,   )
                          )

           Defendants.   )
_____)

# JOINT STATUS REPORT

Under Fed. R. Civ. P. 16, D. Del. L.R. 16.2, and the Court's Order Re: Case Management In Civil Cases of March 15, 2016 ("Order"), the parties to these actions jointly submit this Joint Status Report.  As required by the Order and Fed. R. Civ. P. 26(f), Counsel for the parties to these actions participated in telephone conferences on May 3, 5, 9 and 12, 2016, and exchanged further proposals and engaged in discussions by email, working to narrow their areas of disagreement to present as few issues as possible for resolution by the Court.

## 1.    Jurisdiction and Service

This report addresses seven cases brought in this Court by plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation:  No. 15-1125 against ASUSTeK Computer Inc., and ASUS Computer International; No. 15-1126 against HTC Corporation and HTC America; No. 15-1127 against Visual Land, Inc.; No. 15-1128 against Southern Telecom, Inc.; No. 15-1130 against Double Power Technology, Inc., Zowee Marketing Co., Ltd., and Shenzen Zowee Technology Co., Ltd.; No. 15-1131 against YiFang USA, Inc. d/b/a E-Fun, Inc.; and No. 15-1170 against Acer Inc. and Acer America Corp.

Plaintiffs assert that this Court has personal jurisdiction over all defendants, and subject matter jurisdiction over its claims under 28 U.S.C. §§ 1331 and 1338.  The Double Power defendants have moved to dismiss all claims in No. 15-1130 for lack of personal jurisdiction.  The remaining defendants in the other six actions have not challenged personal or subject matter jurisdiction.  All defendants in all actions have been served or have waived service; the defendants to these actions have not challenged sufficiency of service.

### A.      Plaintiffs' Statement

Plaintiffs respectfully request that a scheduling order be entered in these cases regardless of the timing of the Court's ruling on any motions to dismiss.

### B.      Defendants' Statement

In contrast, defendants are content to defer to the Court to manage these cases as it deems appropriate.

### 2.      Substance of the Actions

In these actions, Philips alleges patent infringement by all defendants.  In four of the actions, Nos. 15-1127, 15-1128, 15-1130 and 15-1131, Philips asserts infringement of nine patents:  U.S. Patent Nos. 5,910,797, 6,522,695, 6,690,387, 6,772,114, 7,184,064, 7,529,806, RE43,564, RE44,006, and RE44,913.  In the remaining three actions, Nos. 15-1125, 15-1126 and 15-1170, Philips asserts infringement of those nine patents plus U.S. Patent No. 8,543,819.  Each of Plaintiffs' complaints includes claims for direct infringement, induced infringement, and contributory infringement.

Although no defendant has answered and defendants are still investigating their claims and defenses, which may not be the same across all actions, defendants anticipate that they will

2

deny infringement of the patents asserted against them, will assert that the patents Philips asserts against them are invalid, and may assert other claims and defenses as well.

**3.    Identification of Issues**

**A.    Plaintiffs' Issues**

The issues to be resolved in these cases include:

(a)    The proper construction of the asserted claims of the patents-in-suit;

(b)    Whether Defendants have directly infringed and/or are directly infringing one or more claims of the patents-in-suit;

(c)    Whether Defendants have induced infringement and/or are inducing infringement of one or more claims of the patents-in-suit;

(d)    Whether Defendants have contributorily infringed and/or are contributorily infringing one or more claims of the patents-in-suit;

(e)    Whether Defendants have willfully infringed and/or are willfully infringing one or more claims of the patents-in-suit;

(f)    What damages is Philips entitled to as adequate compensation for Defendants' infringement of the patents-in-suit;

(g)    Whether such damages should be trebled under 35 U.S.C. § 284 for Defendants' willful infringement of the patents-in-suit;

(h)    Whether Defendants shall be ordered to pay Philips pre-judgment and post-judgment interest on the aforementioned damages awarded;

(i)    Whether this case is exceptional within the meaning of 35 U.S.C. § 285;

(j)    Whether Philips is entitled to its attorney fees, costs, and expenses;

**B.    Defendants' Issues**

Although no defendant has answered and defendants are still investigating their claims and defenses, which may not be the same across all actions, defendants anticipate that they will oppose Philips to the extent it asserts its issues above against each of them, will assert that some or all of the patents asserted against them are invalid, that this case is exceptional under 35 U.S.C. § 285, and that Philips should pay defendants to these actions their attorneys' fees, costs and expenses, and may raise other issues, claims, and defenses as well.

### 4.     Narrowing of Issues

The parties to these actions will attempt to resolve as many issues as possible by agreement, thus minimizing the issues for presentation to the Court.

### A.     Plaintiffs' Statement

Plaintiffs believe it is premature to set deadlines for limiting the number of asserted claims or prior art references.  The total number of claims in all 10 patents-in-suit is 148, but plaintiffs have no intention of asserting all, or anywhere close to all, of those claims.  There is currently no reason to expect that plaintiffs will assert an unreasonable number of claims or seek to needlessly expand the scope of the case by introducing new asserted claims at a late stage.

Defendants mischaracterize what occurred in the consolidated cases of FlashPoint Technology, Inc. v. HTC Corp. and HTC America, Inc.  This Court did not order a two-stage narrowing of claims and prior art references over the plaintiff's opposition in those cases. Rather, both sides in that case informed Your Honor during a teleconference on June 10, 2014 that they agreed to firm dates for narrowing claims and prior art references.  Here both sides do not agree.  Moreover, Defendants' proposal here is much more one-sided than was ultimately ordered in Flashpoint.  In Flashpoint, the parties agreed to a first round reduction to "no more than 96 total claims, with no more than 10 claims per patent, from [plaintiff's] infringement

4

contentions" and "no more than 120 total prior art references, with no more than 12 references per patent, from [defendants'] invalidity contentions." *FlashPoint Technology, Inc. v. HTC Corp. and HTC America, Inc.*, No. 14-317, D.I. 62 at *2 (D. Del. June 23, 2014). Here, Defendants' propose they be permitted the same 12 references per patent as in the Flashpoint matter, but Plaintiffs be limited to 5 claims per patent, half what the plaintiff was permitted in Flashpoint. Defendants propose a similar imbalance in the second round of reductions as compared to what the parties agreed to in Flashpoint.

Plaintiffs believe that the parties should first complete the exchange of default disclosures, including initial infringement and validity contentions, and then confer on the issue. At that time, the parties will be in a better position to assess whether there is a need to limit the number of asserted claims or prior art references and, if so, in what manner and on what schedule.

### B.    Defendants' Statement

In each of these seven actions, plaintiffs have asserted either nine or ten patents against the various groups of defendants, including hundreds of potentially asserted claims. Each of these actions would be complicated in its own right; together, they are even more complex. The defendants to these actions believe that all parties should narrow the cases by identifying, and reducing, the number of asserted claims and prior art references. Specifically, defendants propose a two-phase narrowing process: first, after the parties complete the disclosures under Paragraphs 3 and 4 of this Court's Default Standard for Discovery, plaintiffs shall reduce their asserted claims to no more than five per patent, and defendants shall reduce their prior art references to no more than twelve per patent; and second, after the Court rules on claim construction, plaintiffs shall reduce their asserted claims to no more than two per patent, and

defendants shall reduce their prior art references to no more than six per patent.  Defendants'

proposal is modeled after the same two-stage narrowing this Court ordered over opposition in

*FlashPoint Technology, Inc. v. HTC Corp. and HTC America, Inc.*, No. 14-317, D.I. 24 (D. Del.

June 23, 2014) and *FlashPoint Technology, Inc. v. HTC Corp. and HTC America, Inc.*, No. 08-

00139, D.I. 464 (D. Del. June 23, 2014).

Seeking to avoid *FlashPoint*, plaintiffs claim that all parties to that action agreed, during

a telephone conference of June 10, 2014, to allow narrowing.  As plaintiffs carefully do not say,

however, only *one day before that* the *FlashPoint* plaintiffs stated in their Joint Status Report

that no narrowing was necessary, and that the "case is already narrow in scope and

straightforward" and was "well-situated to proceed."  *FlashPoint Technology, Inc. v. HTC Corp.*

*and HTC America, Inc.*, No. 14-317, D.I. 60 at 13 (June 9, 2014).

Defendants do not agree that their proposed narrowing schedule is "one-sided" or

"imbalanced" as compared to the schedule in the *FlashPoint* matters.  In any event, defendants

only learned that plaintiffs considered their proposal "one sided" late in the afternoon of May 13,

the deadline for filing this statement.  Until then, plaintiffs had insisted that there should be no

narrowing of the case, and had declined to discuss the specifics of any narrowing proposal.  Had

plaintiffs been willing to brook this discussion, defendants would have considered their views

regarding the appropriate level of narrowing in these cases.

Defendants' proposal would reduce the complexity of these actions to a level that is

practicable, if on the high side of reasonable.  Plaintiffs declined to accept any schedule for

narrowing the case, instead stating that the parties should later meet and confer regarding how

best to do so.  But the parties are no more likely to agree on narrowing later than they are now.

Finally, plaintiffs argue that there is "currently no reason to expect that plaintiffs will assert an

6

unreasonable number of claims"—in which case there is currently no reason for plaintiffs to refuse the reasonable limits in defendants' proposal.

**5.      Relief (Plaintiffs' Statement)**

Philips seeks the following relief in each of the above-captioned matters:

(a)      A judgment that defendants have directly infringed, indirectly infringed, induced others to infringe, and contributed to the infringement of the patents-in-suit;

(b)      A judgment that defendants be ordered to pay damages adequate to compensate Philips for defendants' infringement of the patents-in-suit, but in no event less than a reasonable royalty, together with prejudgment and post-judgment interest thereon;

(c)      A judgment that defendants be ordered to account for post-verdict infringement and pay no less than a reasonable royalty, together with interest, thereon;

(d)      A judgment that defendants' infringement is deliberate and willful and that defendants be ordered to pay treble damages under 35 U.S.C. § 284.

(e)      A judgment that each case is an exceptional case under 35 U.S.C. § 285, and that Philips be awarded its reasonable attorneys' fees, costs, and expenses;

(f)      Any such other and additional relief as the Court deems just and proper.

As to the computation of damages, Philips states that it has not yet received discovery of sales and other information for the accused products to allow for the computation of damages at this time.

**6.      Amendment of Pleadings**

On December 7, 2015, Plaintiffs filed original complaints in Nos. 15-1125, 15-1126, 15-1127, 15-1128, 15-1130 and No. 15-1131.  On December 18, 2015, Plaintiffs filed an original

complaint in No. 15-1170.  On March 8, 2016, defendants in Nos. 15-1125, 15-1127, 15-1128 and 15-1170 moved to dismiss all claims.  On March 9, 2016, defendants in No. 15-1126 and 15-1131 moved to dismiss all claims.  On April 11, 2016, plaintiffs filed first amended complaints in all actions.  On April 28, 2016, all defendants in all actions again moved to dismiss all claims.

### A.    Plaintiffs' Statement

Plaintiffs propose that all motions to amend the pleadings shall be filed on or before January 9, 2017.  Defendants' proposal includes a carve-out for the issues of inequitable conduct and willfulness.  Plaintiffs believe that all issues should be treated equally, and that a date of January 9, 2017 allows ample time for the parties to take discovery regarding all issues relevant to amending the pleadings.  There is simply no basis for defendants' belief that plaintiffs will "hide the ball" and waste a year of time on illusory claims only to reveal its true case later.  Plaintiffs will be presenting its case through its infringement contentions and seeking discovery in support thereof.  Plaintiffs January 9, 2017 date ensures that parties working diligently to build their cases through discovery can amend their pleadings with any information revealed through discovery.  Defendants' proposal is neither balanced nor appropriate.  Plaintiffs have already asserted willfulness in all of the actions, and thus defendants' proposed carve-outs would serve only to unfairly extend Defendants' right to inject inequitable conduct allegations into these cases.

Defendants initially proposed there be no deadline for amending to add inequitable conduct allegations, and then on the afternoon this submission was due proposed a deadline of July 21, 2017.  That would leave very little time in the discovery schedule for Philips to react to a new claim and do anything more than serve a contention interrogatory on the issue.  While defendants profess concern they may not learn facts giving rise to potential inequitable conduct

allegations until after the exchange of discovery, they ignore the fact that plaintiffs' proposal contemplates 7 months of discovery prior to the January 9, 2017 deadline for amendments. And, if subsequent discovery, after January 9, 2017, leads to new bases for an inequitable conduct claim that could not have been discovered prior to January 9, 2017, defendants would be free to seek an amendment of the scheduling order on showing of good cause even after January 9, 2017. Defendants' proposal would improperly reserve for themselves, until nearly the end of the fact discovery period, the ability to surprise Philips with an inequitable conduct claim.

### B.      Defendants' Statement

Defendants propose to require amendment of pleadings by November 4, 2016, except for amendments asserting inequitable conduct and willfulness, which they propose for July 21, 2017. Plaintiffs propose to require all amendments, even those asserting inequitable conduct and willfulness, by January 9, 2017. Defendants respectfully submit that their proposal more aptly reflects the realities of litigation than does plaintiffs' proposal.

For most topics, there is no reason to delay amendment of pleadings beyond November. For example, plaintiffs can easily confirm by then, if they do not know already, whether they must amend to add additional affiliates of one or more defendant groups. Inequitable conduct and willfulness are different, however, as this Court has acknowledged, "[b]ecause inequitable conduct must be pled with particularity, parties will often not possess the necessary information to substantiate such a claim until discovery is taken." *L'Oreal SA et al v. MSD Consumer Care, Inc.*, No. 12-99, Docket No. 168 (D. Del. Sept. 18, 2014). On these issues, neither plaintiffs nor defendants can complete their investigations by November 2016 or even January 2017.

### 7.    Joinder of Parties

At this time, the parties do not anticipate the need to join additional parties in any of the pending actions.  Nonetheless, the parties may seek to join additional parties in accordance with the Scheduling Order and the Federal Rules of Civil Procedure.

### A.    Plaintiffs' Statement

Plaintiffs propose that all motions to join parties shall be filed on or before January 9, 2017.  Plaintiffs believe that the deadline to join parties should coincide with the deadline to amend pleadings.  For the reasons stated above, plaintiffs believe that defendants' proposal is unbalanced and inappropriate.

### B.    Defendants' Statement

Defendants propose to require joinder by November 4, 2016, while plaintiffs would delay the joinder deadline until January 9, 2017.  As with the deadline for amendment of pleadings, only defendants' proposal reflects the realities of litigation.  By November 4, 2016, plaintiffs will know if they must add additional parties to each group of defendants.  Indeed, plaintiffs may very well already know, as plaintiffs presumably researched the structure of each defendant group before drafting their original complaints.

### 8.    Discovery

All parties to these actions believe that the Court should coordinate discovery and claim construction among the seven actions covered by this report, and discovery in any of these actions shall be usable in any of these actions as if obtained directly in that action.  All parties to these actions also expect to cooperate in the scheduling of depositions to minimize disruption to witnesses.

ME1 22528881v.1

A.      **Fact discovery**

The parties to these actions currently anticipate taking fact discovery that will likely include, without limitation:  (1) requests for production of documents and things; (2) requests for admission, including requests directed to authentication of documents; (3) interrogatories, including contention interrogatories; and (4) depositions, including depositions under both Fed. R. Civ. P. 30(b)(1) and 30(b)(6).  Third-party discovery may also be required.

i.      **Document Production Deadlines**

**Plaintiffs propose** that discovery be substantially complete on May 1, 2017.

**Defendants to these actions propose** that discovery be substantially complete on June 30, 2017.

a.      **Plaintiffs' Statement**

Plaintiffs propose that document production be substantially complete on or before May 1, 2017.  Plaintiffs' proposal gives the parties more than 11 months from the date of this Joint Status Report to serve requests and collect and produce responsive documents.  Plaintiffs see no reason why more time should be needed.  Plaintiffs' proposal allows 7 months between the final disclosures under this Court's Default Standard for Discovery and substantial completion of document production.  Defendants' position appears to be based on the notion that document collection must wait until initial contentions have been exchanged.  This is incorrect.  The parties can and should respond to document requests in a timely fashion after they are served.  Exchange of initial contentions is not a prerequisite to responding to document requests.

Further, defendants' position that the date for substantial completion must be after the date the Court issues its claim construction ruling is similarly misguided and will only lead to later production of documents, and either less time for taking depositions or a greater risk that

witnesses will need to be recalled.  The parties will largely know whether documents are responsive to previously served document requests before receiving the Court's ruling on claim construction.  It is presumptive to assume there will be a claim construction ruling that will trigger an obligation to produce a large volume of additional documents that would make a party's good faith prior production substantially incomplete.  Furthermore, should the parties need to supplement their document production after the date for substantial completion of document production, they may do so.

Plaintiffs further propose that all fact discovery in this case should be completed by September 8, 2017.  Plaintiffs believe that there should be 4 months between the date for the substantial completion of document production and the date for the close of fact discovery to allow adequate time for the taking of depositions and other discovery after documents have been substantially produced.  Defendants' proposal only allows for 3 months between these dates, which will prejudice plaintiffs' ability to take the discovery needed to prove its case.  Plaintiffs will presumably need to take more discovery during this time period than defendants as, for example, plaintiffs will need a separate set of infringement related depositions from each defendant group while defendants can jointly take all discovery they require from plaintiffs.  The extra time proposed under plaintiffs' schedule is also intended to allow sufficient time for conducting discovery concerning events that may occur after the substantial completion of document production such as privilege logs, reliance on advice of counsel, and final contentions.

### b.     Defendants' Statement

Plaintiffs suggest that substantial completion of document production occur by May 1, 2017, while defendants suggest June 30, 2017.  For several reasons, defendants' proposed date makes sense and plaintiffs' proposed date does not.  First, plaintiffs' proposal would require the

parties to substantially complete their document production while simultaneously preparing for the claim construction hearing; defendants' proposal would separate these deadlines.  Second, defendants' proposal allows a reasonable amount of time between the final disclosures under Paragraph 4 of this Court's Default Standard for Discovery, which the parties have agreed should come on September 30, 2016, and the substantial completion of document production. Defendants propose nine months between these milestones, which is a reasonable time for cases of this magnitude.  Plaintiffs propose only seven months, which is too compressed.  Plaintiffs argue that their proposal "gives the parties more than 11 months from the date of this Joint Status Report to serve requests and collect and produce responsive documents," which is true but irrelevant, as defendants will not even know which products are accused until plaintiffs serve their Paragraph 4(c) disclosures on August 26, 2016, and for a month after that will focus on serving the Paragraph 4(d) disclosures due on September 30, 2016.

Plaintiffs argue that "there should be 4 months between the date for the substantial completion of document production and the date for the close of fact discovery to allow adequate time for the taking of depositions and other discovery after documents have been substantially produced."  In that vein, defendants offered to compromise on the date for substantial completion of document production by moving it to May 26, 2016, as long as plaintiffs agreed to move the close of fact discovery *later*, to October 6, 2016, giving plaintiffs more than the four months they now declare "adequate time for the taking of depositions and other discovery after documents have been substantially produced."  Plaintiffs refused this compromise offer.

Plaintiffs argue that their schedule provides more time for discovery concerning "reliance on advice of counsel, and final contentions."  This is simply incorrect:  defendants' proposed

schedule provides *more* time than plaintiffs' between these events and the close of fact discovery.

Defendants suggest that fact discovery close on October 6, 2017, six weeks after the final invalidity contentions, which provides enough time for final discovery requests responsive to the invalidity contentions.  Plaintiffs, in contrast, suggest a date only 28 days after invalidity contentions, which would prevent them from taking discovery responsive to the those contentions.  But plaintiffs have refused to confirm that they assume this risk—and have thus set up their own deadline to fail.

### ii.      Requests for Admission

Each side of each case may serve 50 requests for admission.  Thus, for example, the defendants in No. 15-1125 may collectively serve 50 requests for admission on the plaintiffs, and the plaintiffs may collectively serve 50 requests for admission on the defendants in No. 15-1125.

### iii.      Interrogatories

**Plaintiffs propose** that Plaintiffs may serve a maximum of 25 interrogatories, including contention interrogatories, on each group of defendants in each of the above-captioned matters. Defendants may serve a maximum of 15 joint and 10 individual interrogatories, including contention interrogatories, on Plaintiffs.

**Defendants to these actions propose** that each side of each case may serve 25 interrogatories.  Thus, for example, the defendants in No. 15-1125 may collectively serve 25 interrogatories on the plaintiffs, and the plaintiffs may collectively serve 25 interrogatories on the defendants in No. 15-1125.

14

### a.      Plaintiffs' Statement

Plaintiffs believe that there are common issues for defendants (e.g., validity) across these actions and that defendants stand to greatly benefit from discovery taken in one action being useable in the other actions.  However, plaintiffs do not gain the same advantage as its issues (e.g., infringement) will likely have to be proven separately for each defendant group, and due to protective orders that will be in place.  And, contrary to defendants' suggestion, an interrogatory response from one defendant group identifying the prior art it will rely on is presumably not binding on the defendants in the other 6 cases.  Therefore, while defendants have proposed that all discovery obtained in any one of the seven actions shall be "useable in any of these actions," as a practical matter most of the discovery taken by Philips from defendants in one action will likely not be useful, even if theoretically "useable," against a defendant in another action.  While defendants' proposal ostensibly calls for equality between plaintiff and each defendant, it ignores this issue entirely.

Under defendants' proposal, each defendant group would have the benefit of up to 175 interrogatory responses from plaintiffs across all seven actions.  By contrast, plaintiffs would only receive 25 interrogatory responses from the HTC, ASUS, and Acer defendant groups and only 10 interrogatory responses from the YiFang, Visual Land, Double Power, and Southern Telecom defendant groups.  Responses that plaintiffs receive from defendants in one case are far less likely to be of significant relevance or practical use in the other cases.  Plaintiffs' proposal is intended to address this disparity.

Further, there is no basis for limiting Philips to 10 interrogatories in the YiFang, Visual Land, Double Power, and Southern Telecom cases.  There is no showing that it would be unduly burdensome for the YiFang, Visual Land, Double Power, and Southern Telecom defendant

groups to respond to 25 interrogatories, the default number litigants are entitled to under the Federal Rules of Civil Procedure.

Finally, plaintiffs propose that the Court order the parties to cooperate in the service and conduct of fact and expert discovery to avoid cumulative or duplicative discovery requests, except when good faith need is presented.  Defendants do not propose that they should have to cooperate in their written discovery requests.   Without such cooperation, plaintiffs will be overly burdened by being compelled to respond to cumulative and duplicative written discovery requests.

### b.      Defendants' Statement

Plaintiffs propose granting 175 interrogatories to themselves, but only 85 total interrogatories to the seven groups of defendants in these cases.  Plaintiffs' proposal is both deeply inequitable and contrary to the Federal Rules, which contemplate that plaintiffs and defendants, by default, have an equal number of interrogatories. Fed. R. Civ. P. 33(a)(1) (each "party may serve on any other party no more than 25 written interrogatories").

Plaintiffs argue, without justification, that there will be more common discovery issues regarding them than regarding defendants, evidently because there is only one group of plaintiffs and there are seven groups of defendants.  This argument is not correct generally or as applied here.  If this argument were generally correct, the Federal Rules would not provide, as they do, for an equal number of interrogatories between all plaintiffs and all defendants, regardless of the number of plaintiffs and defendants in a particular case.

Nor is plaintiffs' argument correct in the present litigations.  Plaintiffs assert two reasons they should receive substantially more interrogatories than defendants: (1) "due to protective orders that will be in place"; and (2) that "validity" is a "common issue[] for defendants."  But

16

no protective order will prevent plaintiffs' outside counsel—who are the same in each case—from discovering the details of defendants' accused functionality, and thus no protective order will give plaintiffs an excuse to take more discovery than defendants.  Further, although plaintiffs contend that "validity" is a "common issue[] for defendants," to the extent an issue is common it is common for everyone, plaintiffs and defendants, and plaintiffs may benefit in all seven cases from an interrogatory to one defendant regarding, for example, its prior art.  More importantly, however, plaintiffs acknowledge that they must prove infringement by each group of defendants using specific facts relating to that defendant, but ignore the necessarily corollary that each defendant group will necessarily assert their own defenses, ask their own questions, and conduct their own discovery in response to plaintiffs' specific discovery against them.

Furthermore, not all of the defendant groups are the same:  here, plaintiffs sued three defendant groups—the Acer, ASUS and HTC defendants—which are substantially larger and have access to substantially more resources, than the four other defendant groups—the Double Power, Southern Telecom, Visual Land and YiFang defendants.  The newly adopted Federal Rules require consideration of the relative resources of each defendant, and the relative burden and expense to same, in determining the scope of discovery.  Fed. R. Civ. P. 26(b)(1).  Having sued numerous defendants of varying sizes, plaintiffs must accept that discovery as to these disparate groups must be tailored to their proportional resources.  Defendants accordingly propose 25 interrogatories for and against each of the larger defendants, and 10 interrogatories for and against each of the smaller defendants.  Plaintiffs offer no argument against this protection for the smaller players; none exists.

17

### iv.     Depositions

**Plaintiffs propose** that Plaintiffs are limited to a total of 120 hours of fact depositions as to each group of defendants in each of the above-captioned matters.  Defendants are collectively limited to a total of 360 hours of fact depositions, and are limited to 120 hours per each group of defendants.  Plaintiffs and Defendants may each take an additional 50 hours of depositions of third party witnesses.  The parties shall cooperate in the service and conduct of fact and expert discovery to avoid cumulative or duplicative discovery requests and to ensure that witnesses are deposed only once, except when good faith need is presented.

**Defendants to these actions propose** limitations on depositions as follows:  in Nos. 15-1125, 15-1126 and 15-1170, each side of each case will receive 100 party deposition hours.  Thus, for example, the defendants in No. 15-1125 may take 100 hours of depositions from the plaintiffs, and the plaintiffs may take 100 hours of depositions from the defendants in No. 15-1125.  In Nos. 15-1127, 15-1128, 15-1130 and 15-1131, each side of each case will receive 28 party deposition hours, implemented in the same fashion as the other three cases, without prejudice to raising the limit to 70 hours of party depositions for each side, if the facts and circumstances of a particular case genuinely so require.

Depositions of inventors will count as party depositions, even if the inventors are no longer employed by plaintiffs.  If (and only if) depositions of inventors will count as party depositions, defendants agree that plaintiffs and defendants may each collectively take an additional 50 hours of depositions of third party witnesses.

### a.     Plaintiffs' Statement

Plaintiffs believe that there are common issues for defendants (e.g., validity) across these actions and that defendants stand to greatly benefit from discovery taken in one action being

useable in the other actions.  For example, deposition testimony from an inventor of a patent is equally usable to all defendants.  However, plaintiffs do not gain the same advantage as plaintiffs will likely have to prove infringement separately for each defendant group.  Notably, defendants do not contend that deposition testimony from one defendant group on how its products work will be useful to prove how the different products of a different defendant group work, or whether they infringe.  Therefore, while defendants have proposed that all discovery obtained in any one of the seven actions shall be "useable in any of these actions," as a practical matter most of the discovery taken by Philips from defendants in one action will likely not be useful, even if theoretically "useable," against a defendant in another action.  While defendants' proposal ostensibly calls for equality between plaintiff and each defendant, it ignores this issue entirely.

Under defendants' proposal, each defendant group would have the benefit of up to 412 hours of deposition testimony from plaintiffs across all seven actions, the vast majority of which should be equally useful to all defendant groups.  By contrast, plaintiffs would only receive 100 hours of deposition testimony from the HTC, ASUS, and Acer defendant groups, and far less hours of deposition testimony (only 28 guaranteed hours) from the YiFang, Visual Land, Double Power, and Southern Telecom defendant groups.  Given the near complete overlap in asserted patents, defendants will all have common interest in the selection and conduct of depositions of plaintiffs' witnesses.  By contrast, deposition testimony taken by plaintiffs from defendants in one case may be of little relevance or practical use in the other cases.  In short, the practical effect of defendants' proposal is that each defendant group would be entitled to over 400 hours of relevant testimony that each could reasonably expect to be relevant and useful in its case. Plaintiffs, on the other hand, would only get 100 hours of testimony it could rely on being useful in each of the HTC, ASUS, and Acer cases.  And, plaintiffs would be assured of only 28 hours of

testimony it could rely on taking and being useful in each of the YiFang, Visual Land, Double Power, and Southern Telecom cases.

The disparity in defendants' proposal is palpable and fundamentally unfair, particularly in the YiFang, Visual Land, Double Power, and Southern Telecom cases.  To the extent defendants assert that the defendants differ in size, revenue, and development effort, that does not change the fact that plaintiffs will need full discovery from each of the defendant groups, because it must prove its case against each defendant.  Defendants have not pointed to any actual evidence that the discovery proposed from any of the defendants would be unduly burdensome.  They simply assert, without proof, that because certain defendants are smaller and have fewer sales, they should only be required to provide the equivalent of 4 depositions (7 hours each) for cases involving 9-10 patents.

Plaintiffs' proposal takes into account the obvious overlap and similarity in interest and discovery needs across the defendant groups.  It also takes into account the fact that plaintiffs must separately discover and prove its case against each defendant group.

Plaintiffs propose that the Court order the parties to cooperate in the service and conduct of fact and expert discovery to avoid cumulative or duplicative discovery requests and to ensure that witnesses are deposed only once, except when good faith need is presented.  Defendants' proposal that they expect to cooperate in the scheduling of depositions to minimize disruption to witnesses is not enough by itself to ensure that plaintiff's witnesses are not overly burdened by the taking of cumulative and duplicative depositions.  Except when good faith need is presented, defendants' should be required to take joint depositions of plaintiffs' witnesses.

### b.      Defendants' Statement

The parties agree that plaintiffs and defendants should each take 50 hours of third-party depositions—as long as the 17 inventors are treated as parties for purposes of counting depositions.  Regarding party depositions, defendants propose 100 deposition hours for and against the larger defendant groups, and up to 70 hours for and against the smaller defendant groups, with the understanding that parties will try to limit those depositions to 28 hours. Because plaintiffs have not disclosed how many of the 17 inventors qualify as party deponents, defendants suggest avoiding a potential issue by treating all inventor depositions as party depositions.

Plaintiffs, in contrast, propose granting 840 hours of party depositions to themselves, but only 360 total hours of party depositions to defendants.  Plaintiffs' proposal would not lead to fair conduct of litigation, but to prejudicially one-sided discovery.  Contrary to plaintiffs' assertions, the various defendant groups will have different facts applied to them, different arguments against them made by the plaintiffs, and different strategies and tactics to overcome these arguments.  Plaintiffs' proposal would prevent the various defendant groups from mounting individual defenses to what plaintiffs admit will be individual cases.

### (b)      Expert Discovery

The parties also anticipate that testimony from experts, including without limitation technical and economic damages experts, will be necessary.  The parties anticipate that such expert discovery will be taken in accordance with the Federal Rules of Civil Procedure and the Court's Local Rules.

The parties will meet and confer after the initial exchange of expert reports to discuss any appropriate limits to expert discovery beyond those in the Federal and Local Rules.

ME1 22528881v.1

**(c)      Schedule**

The parties to these actions have agreed to most aspects of a proposed schedule, as set

forth below.  The parties anticipate that the Court will determine the order in which it will try

these actions, and will set more detailed trial dates for each of these cases, at the Trial Planning

Conference they suggest take place in April 2018.

| Date | Event |
|------|-------|
| June 17, 2016 | Rule 26(a)(1) Initial Disclosures and Disclosures under the Court's Default Standard for Discovery ¶ 3 |
| June 17, 2016 | Disclosures under the Court's Default Standard for Discovery ¶ 4(a) |
| July 1, 2016 | Protective Order and Order regarding the production of Electronically Stored Information |
| July 22, 2016 | Disclosures under the Court's Default Standard for Discovery ¶ 4(b) |
| July 22, 2016 | Defendants shall also produce sales figures for the accused products |

Plaintiffs believe the calendar for these actions should include the latter date; defendants believe

it should not.

**Plaintiffs' Statement.**  Plaintiffs believe that the production of sales figures for the

accused products will allow the parties to better assess the value of the case and facilitate early

settlement discussions.  Disclosure of sales figures is not burdensome and defendants will need

to produce these materials in discovery anyway.

**Defendants' Statement.**  Plaintiffs propose to deviate from the usual practice of this

Court by requiring production of sales figures for their list of accused products on a very early

date certain, July 22.  Plaintiffs provide scant justification for this request, stating only that

"[d]isclosure of sales figures is not burdensome and defendants will need to produce these

materials in discovery anyway."  This is both incorrect and insufficient.  For many if not all

defendants to these actions, gathering of sales figures is actually quite burdensome, involving

queries to departments that handle sales in different channels, amalgamation and careful checking of numbers and, for some defendants, expenditure of significant effort required to determine whether devices were sold in the United States.

Even if plaintiffs' assertion were correct—and it is not—their justification is insufficient. If "defendants will need to produce these materials in discovery anyway" were sufficient to obtain a special Court order requiring a specific type of production, the parties would have a laundry list of requests for the Court to enter. Plaintiffs should seek this information as intended by the Federal Rules and the Rules of this Court: through discovery requests.

| Date | Event |
|------|-------|
| August 26, 2016 | Disclosures under the Court's Default Standard for Discovery ¶ 4(c) |
| September 30, 2016 | Disclosures under the Court's Default Standard for Discovery ¶ 4(d) |
| October 21, 2016 | Plaintiffs shall reduce the number of asserted claims to no more than five per patent |
| November 18, 2016 | Defendants shall reduce prior art references to no more than twelve per patent |

Defendants believe the calendar for these actions should include the latter two dates; plaintiffs believe it should not. The parties have addressed this issue in their separate statements under Section 4, "Narrowing of Issues," above.

| Date | Event |
|------|-------|
| ? | Joinder of parties and amendment of pleadings [except inequitable conduct and willfulness] |

Plaintiffs believe this date should fall on January 9, 2017, and should not exempt inequitable conduct and willfulness; defendants believe it should fall on November 4, 2016, and should exempt inequitable conduct and willfulness, amendments regarding which should fall due on

23

July 21, 2017.  The parties have addressed this issue in their separate statements under Section 6, "Amendment of Pleadings," and Section 7, "Joinder of Parties," above.

| Date | Event |
|---|---|
| December 2, 2016 | Exchange proposed terms for claim construction |
| December 23, 2016 | Exchange proposed constructions |
| January 20, 2017 | File Final Joint Claim Chart |
| February 17, 2017 | Opening Claim Construction Briefs |
| March 17, 2017 | Answering Claim Construction Briefs and Joint Appendix of Intrinsic Evidence |
| April __, 2017 | Claim Construction Hearing |
| **Plaintiffs:**  May 1, 2017<br>**Defendants:**  June 30, 2017 | Document Production Substantially Complete |
| **Plaintiffs:**  June 9, 2017 | Parties Exchange Privilege Logs |
| July 21, 2017 | Final Infringement Contentions |
| July 21, 2017 | Plaintiffs shall reduce the number of asserted claims to no more than two per patent |
| August 25, 2017 | Defendants shall reduce the number of prior art references to no more than six per patent |

Defendants believe the calendar for these actions should include the latter two dates; plaintiffs believe it should not.  The parties have addressed this issue in their separate statements under Section 4, "Narrowing of Issues," above.

Substantial Completion of Document Production

The parties have set forth their positions on the date for substantial completion of document production above in section 8.A.i.a. and 8.A.i.b.

Parties Exchange Privilege Logs

24

**Plaintiffs' Statement.**  Plaintiffs propose the parties shall exchange privilege logs on a rolling basis, and shall exchange logs reflecting substantial completion of document production on or before June 9, 2017.  Defendants agree to exchange privilege logs on a rolling basis, but with no set deadline for any particular exchange.  Without a set deadline, there is no mechanism to ensure that the parties exchange logs in a timely fashion.  Plaintiffs believe that 6 weeks after the substantial completion of document production is an appropriate time to require that the rolling production of privilege logs actually reflects the substantial completion of document production.  Any privileged documents discovered after the date set for exchange can be included in supplemental logs to be produced in a rolling fashion prior to the close of fact discovery.

Further, defendants propose an unworkable and unduly burdensome rule that logs be completed within 28 days after the corresponding production of documents.  By definition, privileged documents are not produced, so there is no way of knowing when the 28 days has run for particular documents.  Including such a rule in the scheduling order would accomplish nothing other than to create the potential for discovery disputes that cannot reasonably be policed.

**Defendants' Statement.**  Defendants request that the Court order parties to complete privilege logs within 28 days after after the corresponding production of documents themselves.  Defendants' proposal would obviate the need for an additional deadline in the Court's order, and would clarify that parties cannot use the June 9 date to delay their production of privilege logs.

If plaintiffs also want a specific date on the calendar for the privilege log corresponding to the substantial completion of document production, defendants have no objection, but the procedure for that production should not differ from the procedure for any other production, and

25

the addition of a deadline should not provide parties with an excuse to delay their prior

privilege logs.

| Date | | Event |
|---|---|---|
| August 4, 2017 | | Reliance on advice of counsel; defendants to disclose intent and produce documents and opinions for reliance upon advice of counsel conduct and willfulness |
| **Plaintiffs** | **Defendants** | |
| August 11, 2017 | August 25, 2017 | Final Invalidity Contentions |
| September 8, 2017 | October 6, 2017 | Close of fact discovery |
| October 10, 2017 | November 10, 2017 | Opening expert reports |
| November 20, 2017 | December 8, 2017 | Rebuttal expert reports |
| December 11, 2017 | December 22, 2017* | Reply expert reports |

Plaintiffs believe the calendar for these actions should include the latter date; defendants believe

it should not.  Plaintiffs and defendants disagree over the dates for the previous four dates.

**Plaintiffs' Statement.**

<u>Final Invalidity Contentions</u>

Plaintiffs propose that defendants shall serve their final invalidity contentions on or

before August 11, 2017, three weeks after plaintiffs have served their final infringement

contentions.  It is expected that both sides will have ample opportunity to work on their final

contentions in the 11 months following service of the initial contentions.  Moreover, defendants

will have three weeks more than plaintiffs to react to any claim construction order issued by the

Court.  Defendants need not wait until plaintiffs serve their final infringement contentions before

beginning work on their own final invalidity contentions.  To the extent defendants believe that

26

plaintiffs' final infringement contentions warrant a change in their final invalidity contentions, three weeks should be more than adequate.

<u>Close of Fact Discovery and Schedule for Expert Reports</u>

Plaintiffs' proposed deadline for completion of fact discovery (set forth in section 8.A.1.a. above) would provide for 15 months of discovery following the exchange of initial disclosures.  That is expected to be adequate time for the parties to conduct factual discovery. Plaintiffs' proposal leaves 4 weeks between the service of defendants' final invalidity contentions and the close of fact discovery.  It is not clear what additional discovery would need to be taken in response to defendants' final invalidity contentions and defendants' position that plaintiffs should have to "assume this risk" implies that defendants might withhold theories or disclosures that would require additional discovery until their final invalidity contentions. Plaintiffs do not assume the risk that defendants will interject new theories in their final contentions that might warrant additional discovery.

Further, plaintiffs' proposal would allow for over 4 weeks before service of opening expert reports on issues on which a party bears the burden of proof on October 10, 2017. Plaintiffs propose that rebuttal expert reports shall be served on or before November 20, 2017. Plaintiffs propose that reply expert reports shall be served on or before December 11, 2017.

Plaintiffs and defendants agree that the date for opening expert reports should be approximately one month after the close of fact discovery. However, plaintiffs believe that 6 weeks should be allotted to prepare rebuttal expert reports while defendants have proposed only 4 weeks.  Defendants' proposal is overly aggressive and does not provide enough time for the parties to adequately respond to the opinions provided in the opening expert reports.  Further, defendants' proposal is especially prejudicial to plaintiffs who will need to respond separately to

opening expert reports from seven defendant groups.  Each defendant group will only need to reply to opening expert reports from one party group (i.e., plaintiffs).  Tellingly, defendants seek an extra 5 weeks of time to prepare their own final invalidity contentions, but seek to shorten the time for preparing rebuttal expert reports, which is clearly prejudicial to plaintiffs who will have to respond to reports from 7 defendant groups.

Defendants' position that more time must be allotted between the close of fact discovery and opening expert reports than between opening expert reports and rebuttal expert reports is misguided. Defendants' proposal assumes that no work can be done on the drafting of opening expert reports until fact discovery has closed. That is incorrect.

Reply Expert Reports

Further, plaintiffs believe a third round of expert reports would benefit all parties. A third round of reports would ensure plaintiffs have an opportunity to respond to the noninfringement and damages opinions offered by defendants' experts, and defendants have an opportunity to respond to the validity opinions offered by plaintiffs' experts.  Plaintiffs' proposal does add value because, for example, plaintiffs may at the time their opening reports are served have very little information about the opinions defendants' damages or infringement experts will disclose in the second round of reports.  Plaintiffs propose that the third round of expert reports be limited to rebuttal of the opinions offered in the second round of reports.  Such a limitation would mitigate defendants' concern that the reply reports may contain improper new argumentation that should have appeared in the opening reports.  Further, any party may pursue a motion to strike any opinions that should have properly appeared in the opening reports.

**Defendants' Statement.**  The parties disagree over the timing of four additional dates: defendants' final invalidity contentions, the close of fact discovery, and the opening and rebuttal

28

expert reports.  For several reasons, defendants respectfully request that the Court enter defendants' proposed dates for these events.

Plaintiffs' proposal does not leave enough time for defendants' final invalidity contentions.  Defendants propose these contentions fall due on August 25, 2017, exactly five weeks after the parties have agreed plaintiffs should serve their final infringement contentions, on July 21, 2017.  Plaintiffs, in contrast, insist that defendants' final invalidity contentions must fall due on August 11, 2017, only three weeks after plaintiffs' final infringement contentions.  As defendants have repeatedly explained in meet-and-confer discussions, those two weeks should pose no problem for plaintiffs, but are critical to defendants, who must review plaintiffs' final infringement contentions, research and understand any changes they contain, coordinate across the seven actions, and prepare detailed invalidity contentions.  Three weeks is not enough time to complete these tasks; indeed, five weeks is the bare minimum.

Defendants suggest that fact discovery close on October 6, 2017, six weeks after the final invalidity contentions, which provides enough time for final discovery requests responsive to the invalidity contentions.  Plaintiffs, in contrast, suggest a date only 28 days after invalidity contentions, which would prevent them from taking discovery responsive to the those contentions.  But plaintiffs have refused to confirm that they assume this risk—and have thus set up their own deadline to fail.

Plaintiffs' proposed dates for expert reports are also flawed.  Defendants' proposal would grant five weeks for opening reports after the close of fact discovery, and four weeks for rebuttal reports after opening reports.  Plaintiffs' proposal, in contrast, would grant 32 days for opening expert reports, but 41 days for rebuttal reports—an odd increase in time for rebuttal reports over opening reports.

ME1 22528881v.1

| Date | Event |
|------|-------|
| January 19, 2018 | Close of expert discovery |
| February 2, 2018 | Opening summary judgment letter briefs seeking permission to file summary judgment motions |
| February 16, 2018 | Answering letter briefs seeking permission to file summary judgment motions |
| February 23, 2018 | Reply letter briefs seeking permission to file summary judgment motions |
| 14 days after order | Summary Judgment – opening briefs (if allowed by the Court) |
| By Local Rule | Summary Judgment – answering briefs |
| By Local Rule | Summary Judgment – reply briefs |
| April __, 2018 | Trial Planning Conference |
| May __, 2018 | First Pretrial Order |
| June  __, 2018 | First Pretrial Conference |
| July __, 2018 | First Trial |

### 9.    Estimated Length of Trials

### A.    Plaintiffs' Statement

As of this date, Philips requests that each of the above-captioned matters be tried separately in a series of jury trials.  Philips currently estimates a trial length of ten (10) days per defendant/defendant group in each of the above-captioned matters.

### B.    Defendants' Statement

The defendants to each of these actions request separate trials under 35 U.S.C. § 299. Depending on the defendants at issue, defendants estimate that trials of these actions could last from 7-10 trial days.

**C.     Joint Statement**

Although all parties to these actions will attempt to reduce the length of each trial, it is too early to foresee what methods for reducing the length of trial may be useful and agreed upon.

**10.     Jury Trial**

Philips has demanded a trial by jury in each of the above-captioned matters for all issues so triable.  Because no defendant has answered in any of these actions, each defendant in these actions retains the ability to demand a trial by jury.

**11.     Settlement**

**A.     Joint Statement**

The parties to these actions have not yet been able to resolve their disputes.

**B.     Plaintiffs' Statement**

Another related case, contemporaneously filed against Digital Products International, Inc. (C.A. No. 15-1129-GMS), was terminated on March 3, 2016 as a result of a stipulation of dismissal without prejudice brought about by a settlement between the parties.

Philips believes that settlement is possible in each of the related actions, and is open to a referral to a Magistrate Judge for settlement discussions at an appropriate time.

**C.     Defendants' Statement**

Defendants to these actions do not know the circumstances under which Philips settled No. 15-1129, although they will likely seek this information in discovery.  Defendants are open to all reasonable mechanisms for possible settlement.

31

**12.** **Other Matters Considered Conducive to the Just, Speedy, and Inexpensive Determination Of This Action**

The parties expect to produce confidential information in these actions.  Accordingly, the parties intend to request from the Court a protective order governing confidentiality, and an order regarding the production of electronically stored information.  The parties propose to submit proposed forms to the Court for approval by July 1, 2016.  Until the Court enters a protective order governing confidentiality, the parties to these actions will comply with D. Del. L.R. 26.2 regarding the production of documents and other discovery on an attorneys'-eyes-only basis.

**13.** **Conference of Counsel**

Counsel for the parties conferred about the foregoing matters by email and telephone at various times from April 28 through May 13, 2016.  Should the Court have any questions regarding the information in this report, counsel for all parties to these actions are prepared to provide any additional information requested by the Court.

McCARTER & ENGLISH, LLP

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Daniel M.Silver
Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
*mkelly@mccarter.com*
*dsilver@mccarter.com*
*bsmyth@mccarter.com*

Michael P. Sandonato
John D. Carlin
Daniel A. Apgar
Jonathan M. Sharret
FITZPATRICK, CELLA, HARPER &
SCINTO
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200
*msandonato@fchs.com*
*jcarlin@fchs.com*
*dapgar@fchs.com*
*jsharret@fchs.com*

*Attorneys for Plaintiffs*

/s/ Rodger D. Smith II
Rodger D. Smith II (#3778)
Eleanor G. Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*rsmith@mnat.com*
*etennyson@mnat.com*

Michael J. Newton
Derek Neilson
Sang (Michael) Lee
ALSTON & BIRD LLP
2828 N. Harwood Street, Suite 1800
Dallas, TX 75201-2139

Patrick J. Flinn
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424

Xavier M. Brandwajn
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East palo Alto, CA 94303

Ross R. Barton
ALSTON & BIRD LLP
101 South Tyron Street, Suite 4000
Charlotte, NC 28280-4000
(704) 444-1000

*Attorneys for Defendants*
*Asustek Coumputer Inc. and*
*Asus Computer International*

33

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

/s/ Rodger D. Smith II
Rodger D. Smith II (#3778)
Eleanor G. Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*rsmith@mnat.com*
*etennyson@mnat.com*

Michael J. Newton
Derek Neilson
Sang (Michael) Lee
ALSTON & BIRD LLP
2828 N. Harwood Street, Suite 1800
Dallas, TX 75201-2139

Patrick J. Flinn
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424

Xavier M. Brandwajn
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East palo Alto, CA 94303

Matt Warren
Patrick Shields
Brian Wikner
Erika Mayo
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
*15-1170@cases.warrenlex.com*

Ross R. Barton
ALSTON & BIRD LLP
101 South Tyron Street, Suite 4000
Charlotte, NC 28280-4000
(704) 444-1000

*Attorneys for Defendants*
*Acer, Inc.,*
*Acer America Corporation,*

34

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Samantha G. Wilson
Anne Shea Gaza (#4093)
Samantha G. Wilson (# 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*agaza@ycst.com*
*swilson@ycst.com*

Elizabeth Rogers Brannen
STRIS & MAHER, LLP
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
(213) 995-6809
*elizabeth.brannen@strismaher.com*

*Attorneys for Defendant*
*Visual Land, Inc.*

SHAW KELLER LLP

/s/ John W. Shaw
John W. Shaw (# 3362)
Karen E. Keller (# 4489)
Andrew E. Russell (# 5382)
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
*jshaw@shawkeller.com*
*kkeller@shawkeller.com*
*arussell@shawkeller.com*

John Schnurer
Kevin Patariu
Ryan Hawkins
Louise Lu
Vinay Sathe
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA 92130
(858) 720-5700

Ryan McBrayer
Jonathan Putman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
(206) 359-8000

*Attorneys for Defendants*
*HTC Corp. and HTC America, Inc.*

35

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Karen L. Pascale
Karen L. Pascale (#2903)
Robert M. Vrana (# 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
kpascale@ycst.com
rvrana@ycst.com

P. Andrew Blatt
WOOD HERRON & EVANS LLP
2700 Carew Tower
Cincinnati, OH 45202
(513) 241-2324
dblatt@whe-law.com

*Attorneys for Defendant*
*Southern Telecom, Inc.*

MORRIS, NICHOLS, ARCHT & TUNNELL
LLP

/s/ Karen Jacobs
Karen Jacobs (#2881)
Mirco J. Haag (#6165)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mhaag@mnat.com

Bryan G. Harrison
LOCKE LORD LLP
Terminus 200
3333 Piedmont Road NE, Suite 1200
Atlanta, GA  30305
404-870-4600
bryan.harrison@lockelord.com

*Attorney for Defendants*
*Double Power Technology, Inc.,*
*Zowee Marketing Co., Ltd. and*
*Shenzen Zowee Technology Co., Ltd.*

36

SHAW KELLER LLP

/s/ John W. Shaw
John W. Shaw (# 3362)
Karen E. Keller (# 4489)
Andrew E. Russell (# 5382)
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
*jshaw@shawkeller.com*
*kkeller@shawkeller.com*
*arussell@shawkeller.com*

Lucian C. Chen
Wing K. Chiu
LUCIAN C. CHEN, ESQ. PLLC
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 710-3007

*Attorneys for Defendant*
*YiFang USA, Inc. D/B/A E-Fun Inc.*

DATED: May 13, 2016

37