IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KONINKLIJKE PHILIPS N.V. and
U.S. PHILIPS CORPORATION,

Plaintiffs,

v.

ACER INC. and
ACER AMERICA CORPORATION,

Defendants.

C.A. No. 15-1170 (GMS)

**DEMAND FOR JURY TRIAL**

**ANSWER OF DEFENDANTS ACER INC. AND ACER AMERICA CORPORATION TO THE SECOND AMENDED COMPLAINT OF KONINKLIJKE PHILIPS N.V. AND U.S. PHILIPS CORPORATION**

Defendants Acer Inc. and Acer America Corporation (collectively, “Defendants” or “Acer”) hereby answer the Second Amended Complaint of Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation (collectively, “Plaintiffs” or “Philips”) as follows:

## Nature of the Action

1. Acer denies that it is liable for patent infringement under 35 U.S.C. § 271. Otherwise, admitted.

## The Parties

2. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

3. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

4. Admitted.

5. Admitted.

**Jurisdiction and Venue**

6. Acer denies that it is liable for patent infringement under the patent laws of theUnited States, Title 35 of the United States Code. Acer admits that this Court has subject matter jurisdiction because this case arises under the patent laws of the United States, subject to its affirmative defenses outlined below. Acer denies any remaining allegations of this paragraph.

7. Acer admits that it is subject to personal jurisdiction in this District for this particular case only. Acer denies any remaining allegations of this paragraph.

8. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States. Acer denies any remaining allegations of this paragraph.

9. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States. Acer denies any remaining allegations of this paragraph.

10. Acer admits that Acer America Corp. has sold and/or offered to sell various products within the state of Delaware. Acer denies any remaining allegations of this paragraph.

11. Acer admits that Acer America Corp. has sold and/or offered to sell various products within the state of Delaware. Acer denies any remaining allegations of this paragraph.

12. Denied.

13. Denied.

14. Denied. Venue is improper under 28 U.S.C. § 1400(b), which states that patent infringement actions may be brought only "in the judicial district where the defendant

resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." For corporate entities, a defendant "resides" in its state of incorporation. Defendants are not incorporated in Delaware, and do not have a "regular and established place of business" in Delaware. Under § 1400(b), venue is therefore improper in this District. The Supreme Court has recently granted certiorari with respect to the decision in *In re TC Heartland*, 821 F.3d 1338 (Fed. Cir. 2016), to address this issue. Pending resolution of this issue of law, Defendants object to venue in this district.

**Philips' Patents-in-Suit**

15. Acer admits that U.S. Patent No. RE 44,913 is entitled "Text entry method and device therefor," and identifies on its face May 27, 2014, as the issue date and Matthew J. Bickerton as inventor. Acer admits that Exhibit 1 appears to be a copy of the RE'913 patent. Acer denies that the RE'913 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

16. Acer admits that U.S. Patent No. 6,690,387 is entitled "Touch-screen image scrolling system and method," and identifies on its face February 10, 2004, as the issue date and John Zimmerman and Jacquelyn Annette Martino as inventors. Acer admits that Exhibit 2 appears to be a copy of the '387 patent. Acer denies that the '387 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

17. Acer admits that U.S. Patent No. 7,184,064 is entitled "Touch-screen image scrolling system and method," and identifies on its face February 27, 2007, as the issue date and John Zimmerman and Jacquelyn Annette Martino as inventors. Acer admits that Exhibit 3 appears to be a copy of the '064 patent. Acer denies that the '064 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

18. Acer admits that U.S. Patent No. 7,529,806 is entitled "Partitioning of MP3 content file for emulating streaming," and identifies on its face May 5, 2009, as the issue date and Yevgeniy Eugene Shteyn as inventor. Acer admits that Exhibit 4 appears to be a copy of the '806 patent. Acer denies that the '806 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

19. Acer admits that U.S. Patent No. 5,910,797 is entitled "Portable data processing apparatus provided with a screen and a gravitation-controlled sensor for screen orientation," and identifies on its face June 8, 1999, as the issue date and Leonardus G.M. Beuk as inventor. Acer admits that Exhibit 5 appears to be a copy of the '797 patent. Acer denies that the '797 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

20. Acer admits that U.S. Patent No. 6,522,695 is entitled "Transmitting device for transmitting a digital information signal alternately in encoded form and non-encoded

form," and identifies on its face February 18, 2003, as the issue date and Alphons A.M.L. Bruekers, Johannes M.M. Verbakel, and Marcel S.E. Van Nieuwenhoven as inventors. Acer admits that Exhibit 6 appears to be a copy of the '695 patent. Acer denies that the '695 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

21. Acer admits that U.S. Patent No. RE 44,006 is entitled "User interface for television," and identifies on its face February 19, 2013, as the issue date and Lisa Cherian, Robert Andrew Lambourne, and Guy James Roberts as inventors. Acer admits that Exhibit 7 appears to be a copy of the RE'006 patent. Acer denies that the RE'006 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

22. Acer admits that U.S. Patent No. 8,543,819 is entitled "Secure authenticated distance measurement," and identifies on its face September 24, 2013, as the issue date and Franciscus Lucas Antonius Johannes Kamperman as inventor. Acer admits that Exhibit 8 appears to be a copy of the '819 patent. Acer denies that the '819 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

23. Acer admits that U.S. Patent No. 9,436,809 is entitled "Secure authenticated distance measurement," and identifies on its face September 6, 2016, as the issue date and Franciscus Lucas Antonius Johannes Kamperman as inventor. Acer admits that

Exhibit 9 appears to be a copy of the ’809 patent. Acer denies that the ’809 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

24. Acer admits that U.S. Patent No. 6,772,114 is entitled “High frequency and low frequency audio signal encoding and decoding system,” and identifies on its face August 3, 2004, as the issue date and Robert Johannes Sluijter, Andreas Johannes Gerrits, Rakesh Taori, and Samir Chennoukh as inventors. Acer admits that Exhibit 10 appears to be a copy of the ’114 patent. Acer denies that the ’114 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

25. Acer admits that U.S. Patent No. RE 43,564 is entitled “Hand-held with auto-zoom for graphical display of web page,” and identifies on its face August 7, 2012, as the issue date and Jan Van Ee as inventor. Acer admits that Exhibit 11 appears to be a copy of the RE’564 patent. Acer denies that the RE’564 patent was properly issued under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 251, and/or 256. Acer lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph, and on that basis denies those allegations.

## **Factual Background**

26. To the extent a response to this paragraph is required, Acer denies the allegations.

**Notice to Defendants**

27. Acer denies that Plaintiffs provided actual notice of infringement as to any of the patents-in-suit before filing the original Complaint in this action. Acer admits that the parties had pre-suit discussions relating to Acer's products, and that these discussions touched upon patents in Plaintiffs' patent portfolio. But Acer denies that such discussions were sufficient to constitute actual notice of Plaintiffs' infringement allegations, as to any of the patents-in-suit. Acer denies any remaining allegations of this paragraph.

28. Acer admits that the original Complaint in this action alleged infringement of the RE'913 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement allegations concerning the RE'913 patent. Acer admits that Plaintiffs referred to the RE'913 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such references were sufficient to constitute notice of infringement. In particular, Acer denies that Plaintiffs could have provided notice of infringement as to the RE'913 patent via any presentation or communication that occurred before May 27, 2014, which is the date the RE'913 patent came out of re-issue. Acer denies any remaining allegations of this paragraph.

29. Acer admits that the original Complaint in this action alleged infringement of the '387 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement allegations concerning the '387 patent. Acer admits that Plaintiffs referred to the '387 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

30. Acer admits that the original Complaint in this action alleged infringement of the '064 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement

allegations concerning the ’064 patent. Acer admits that Plaintiffs referred to the ’064 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

31. Acer admits that the original Complaint in this action alleged infringement of the ’806 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement allegations concerning the ’806 patent. Acer admits that Plaintiffs referred to the ’806 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

32. Acer admits that the original Complaint in this action alleged infringement of the ’797 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement allegations concerning the ’797 patent. Acer admits that Plaintiffs referred to the ’797 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

33. Acer admits that the original Complaint in this action alleged infringement of the ’695 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement allegations concerning the ’695 patent. Acer admits that Plaintiffs referred to the ’695 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

34. Acer admits the original Complaint in this action alleged infringement of the RE'006 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement allegations concerning the RE'006 patent. Acer admits that Plaintiffs referred to the RE'006 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

35. Acer admits that the original Complaint in this action alleged infringement of the '819 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement allegations concerning the '819 patent. Acer admits that Plaintiffs referred to the '819 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

36. Acer denies that Plaintiff provided actual notice of the infringement allegations concerning the '809 patent before filing the Second Amended Complaint. Acer admits that before filing the Second Amended Complaint, Plaintiffs referred to the '809 patent, by number, in correspondence and in a stipulation filed with the Court. But Acer denies that such references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

37. Acer admits that the original Complaint in this action alleged infringement of the '114 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement allegations concerning the '114 patent. Acer admits that Plaintiffs referred to the '114 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such

references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

38. Acer admits that the original Complaint in this action alleged infringement of the RE'564 patent, but denies that Plaintiffs provided pre-suit actual notice of the infringement allegations concerning the RE'564 patent. Acer admits that Plaintiffs referred to the RE'564 patent in discussions that occurred before Plaintiffs filed the original Complaint, but denies that such references were sufficient to constitute notice of infringement. Acer denies any remaining allegations of this paragraph.

**First Cause of Action: Infringement of U.S. Patent No. RE 44,913**

39. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

40. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Acer admits that the Acer Iconia Tab 10 is a tablet that runs a version of the Android Operating System. Acer denies any remaining allegations of this paragraph.

46. Denied.

47. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

48. Denied.

49. Acer admits that the Acer Iconia Tab 10 is sold with an accompanying user manual. Acer denies any remaining allegations of this paragraph.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

**Second Cause of Action: Infringement of U.S. Patent No. 6,690,387**

54. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

55. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

56. Denied.

57. Acer admits that claim 11 of the ’387 patent depends from claim 9. Acer denies any remaining allegations of this paragraph.

58. Acer admits that claim 12 of the ’387 patent depends from claim 9. Acer denies any remaining allegations of this paragraph.

59. Denied.

60. Acer admits that the Acer Iconia Tab 10 is a tablet that runs a version of the Android Operating System. Acer denies any remaining allegations of this paragraph.

61. Denied.

62. Denied.

63. Denied.

64. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

65. Denied.

66. Acer admits that the Acer Iconia Tab 10 is sold with an accompanying user manual. Acer denies any remaining allegations of this paragraph.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

**Third Cause of Action: Infringement of U.S. Patent No. 7,184,064**

71. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

72. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

73. Denied.

74. Acer admits that claim 2 of the ’064 patent depends from claim 1. Acer denies any remaining allegations of this paragraph.

75. Acer admits that claim 3 of the ’064 patent depends from claim 1. Acer denies any remaining allegations of this paragraph.

76. Denied.

77. Acer admits that the Acer Iconia Tab 10 is a tablet that runs a version of the Android Operating System. Acer denies any remaining allegations of this paragraph.

78. Denied.

79. Denied.

80. Denied.

81. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

82. Denied.

83. Denied.

**Fourth Cause of Action: Infringement of U.S. Patent No. 7,529,806**

84. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

85. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Acer admits that the Acer Iconia One 7 is a tablet that runs a version of the Android Operating System. Acer denies any remaining allegations of this paragraph.

91. Acer admits that the Acer Iconia One 7 ran a version of the Android Operating System when it was released, and still does so today. Acer denies any remaining allegations of this paragraph

92. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

93. Denied.

94. Acer admits that it provides Android Operating System updates to users of its devices. Acer denies any remaining allegations of this paragraph.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

**Fifth Cause of Action: Infringement of U.S. Patent No. 5,910,797**

99. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

100. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

101. Denied.

102. Denied.

103. Acer admits that the Acer Iconia Tab 10 is a tablet that runs a version of the Android Operating System. Acer denies any remaining allegations of this paragraph.

104. Denied.

105. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

106. Denied.

107. Denied.

**Sixth Cause of Action: Infringement of U.S. Patent No. 6,522,695**

108. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

109. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

110. Denied.

111. Denied.

112. Acer admits that the Acer Iconia One 7 is a tablet that runs a version of the Android Operating System. Acer denies any remaining allegations of this paragraph.

113. Acer admits that the Acer Iconia One 7 ran a version of the Android Operating System when it was released, and still does so today. Acer denies any remaining allegations of this paragraph.

114. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

115. Denied.

116. Denied.

**Seventh Cause of Action: Infringement of U.S. Patent No. RE 44,006**

117. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

118. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

119. Denied.

120. Denied.

121. Acer admits that the Acer Iconia One 7 is a tablet that runs a version of the Android Operating System. Acer denies any remaining allegations of this paragraph.

122. Acer admits that the Acer Iconia One 7 ran a version of the Android Operating System when it was released, and still does so today. Acer denies any remaining allegations of this paragraph.

123. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

124. Denied.

125. Denied.

**Eighth Cause of Action: Infringement of U.S. Patent No. 8,543,819**

126. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

127. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Denied.

135. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

136. Denied.

137. Denied.

138. Denied.

139. Denied.

140. Denied.

141. Denied.

**Ninth Cause of Action: Infringement of U.S. Patent No. 9,436,809**

142. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

143. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

144. Denied.

145. Denied.

146. Denied.

147. Denied.

148. Denied.

149. Denied.

150. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

151. Denied.

152. Denied.

153. Denied.

154. Denied.

155. Denied.

156. Denied.

**Tenth Cause of Action: Infringement of U.S. Patent No. 6,772,114**

157. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

158. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

159. Denied.

160. Denied.

161. Acer admits that the Acer Iconia Tab 10 is a tablet that runs a version of the Android Operating System. Acer denies any remaining allegations of this paragraph.

162. Denied.

163. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

164. Denied.

165. Denied.

**Eleventh Cause of Action: Infringement of U.S. Patent No. RE 43,564**

166. Acer repeats and incorporates by reference its responses to each of the paragraphs referred to in this paragraph.

167. Acer lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, and on that basis denies those allegations.

168. Denied.

169. Acer admits that claim 7 of the RE'564 patent depends from claim 1. Acer denies any remaining allegations of this paragraph.

170. Denied.

171. Acer admits that the Acer Iconia One 7 is a tablet that runs a version of the Android Operating System. Acer denies any remaining allegations of this paragraph.

172. Acer admits that the Acer Iconia One 7 ran a version of the Android Operating System when it was released, and still does so today. Acer denies any remaining allegations of this paragraph.

173. Denied.

174. Acer admits that Acer America Corp. has imported, sold, and/or offered to sell various products in the United States bearing the marketing names recited in this paragraph. Acer denies any remaining allegations of this paragraph.

175. Denied.

176. Denied.

## Prayer for Relief

Acer denies all allegations in Philips' prayer for relief and denies that Philips is entitled to any relief.

## General Denial

Except as expressly admitted above, Acer denies each and every allegation in Philips' Second Amended Complaint.

## Acer's Defenses

Acer asserts the following affirmative and other defenses in response to the allegations of the Second Amended Complaint. Acer reserves the right to supplement and amend its defenses and to assert additional defenses as this action proceeds.

### First Affirmative Defense
### Failure To State A Claim

1. Philips has failed to state a claim upon which relief can be granted, for any of the patents-in-suit.

### Second Affirmative Defense
### Non-infringement

2. Acer has not directly infringed, and is not directly infringing, any claims of the patents-in-suit either literally or under the Doctrine of Equivalents. Acer has not induced or contributed to, and is not inducing or contributing to, infringement of the patents-in-suit either literally or under the Doctrine of Equivalents.

**Third Affirmative Defense**
**Invalidity**

3. All asserted claims of the patents-in-suit are invalid for failure to meet one or more of the requirements set forth in 35 U.S.C. §§ 102, 103, 112, 115, 116, 251, and/or 256.

4. Acer incorporates by reference Defendants' Joint Initial Invalidity Contentions, served in this case on September 30, 2016, pursuant to the Court's Scheduling Order and ¶ 4(d) of the Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information.

**Fourth Affirmative Defense**
**Unpatentable Subject Matter**

5. All asserted claims of the RE'564 patent, the '387 patent, the '064 patent, the '806 patent, and the RE'006 patent are unpatentable for failure to meet one or more of the requirements set forth in 35 U.S.C. § 101.

6. The asserted claims of the RE'564 patent are directed to nothing more than the unpatentable abstract concept of magnifying content, coupled with insignificant pre- and post-solution activity. Indeed, this abstract idea is nothing more than a basic application of the laws of nature to replicate a natural phenomenon. As a result, the RE'564 patent falls within one or more of the judicially recognized exceptions to 35 U.S.C. § 101. The asserted claims of the RE'564 patent therefore describe patent-ineligible subject matter under 35 U.S.C. § 101.

7. The asserted claims of the '387 and '064 patents are directed to nothing more than the unpatentable abstract concept of scrolling on a touch screen in a manner that feels "natural" and obeys the basic laws of physics. Indeed, this abstract idea is nothing more than a basic application of the laws of nature to replicate a natural phenomenon. As a result, the '387 and '064 patents fall within one or more of the judicially recognized exceptions to 35 U.S.C.

§ 101. The asserted claims of the ’387 and ’064 patents therefore describe patent-ineligible subject matter under 35 U.S.C. § 101.

8. The asserted claims of the ’806 patent are directed to nothing more than the unpatentable abstract concept of retrieving a multimedia presentation over a network for display. As a result, the ’806 patent falls within one or more of the judicially recognized exceptions to 35 U.S.C. § 101. The asserted claims of the RE’564 patent therefore describe patent-ineligible subject matter under 35 U.S.C. § 101.

9. The asserted claims of the RE’006 patent are directed to nothing more than the unpatentable abstract concept of displaying menu options in an elliptical arrangement, coupled with insignificant pre- and post-solution activity. Indeed, this abstract idea is nothing more than a basic application of the laws of nature to replicate a natural phenomenon. As a result, the RE’006 patent falls within one or more of the judicially recognized exceptions to 35 U.S.C. § 101. The asserted claims of the RE’006 patent therefore describe patent-ineligible subject matter under 35 U.S.C. § 101.

**Fifth Affirmative Defense**
**Invalidity Due To Broadening Re-issue**

10. Philips’ allegations as to the RE’564 patent are barred by 35 U.S.C. § 251 (“No re-issued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.”). The re-issue proceedings that resulted in the RE’564 patent took place outside the two-year period for a broadening re-issue specified by § 251. Nevertheless, Philips improperly enlarged the scope of the original claims of these patents through amendments. The improper broadening during re-issue of renders the RE’564 patent invalid under § 251.

11. The RE'564 patent is a re-issue of U.S. Patent No. 6,466,203 ("the '203 patent"). A copy of the file history for application no. 09/619,426, which led to the '203 patent, is attached hereto as Exhibit 1. A copy of the '203 patent is attached hereto as Exhibit 2.

12. As initially filed, the claims of the '203 patent did not specify the location of the user touch, requiring only that the claimed device be "operative to enable the user to select via the touch screen a portion of the image, when displayed at a first scale, for rendering the selected portion on the display at a second scale larger than the first scale." Ex. 1 at 4570-71.

13. The prosecution history of the '203 patent offers additional evidence. After the Examiner issued a final rejection of all claims of the '203 patent as obvious in light of the prior art, including Tanimoto, Philips filed an application for continuing prosecution – necessary to amend claims after a final rejection – and filed new claims requiring, among other things, that "the selected portion when rendered at the second scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch location." Ex. 1 at 4619. Yet again, the examiner rejected these claims, again noting (among other grounds) that "Tanimoto teaches a touch panel that when displayed at a first scale, for rendering the selected portion on the display at a second scale larger than the first scale, and the second scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch location." Ex. 1 at 4630.

14. On May 13, 2002, Philips amended its claims yet again. Ex. 1 at 4642-48. This time, instead of claiming zooming on any touch *location*, Philips claimed only zooming when "the selected portion when rendered at the first scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch *screen*." Ex. 1 at 4643-44 (emphasis added). Following this amendment, the examiner allowed the claims, noting that the

prior art references "fail to disclose the claimed limitations such as the system," including "the selected portion when rendered at the first scale is a zoomed-in version of part of the image at the first scale substantially centered around the touch screen." Ex. 1 at 4657-58. On October 15, 2002, the Patent Office issued the '203 patent. Ex. 2.

15. Eight years later, on December 22, 2010, Philips filed for re-issue of the '203 patent. A copy of the prosecution history for the re-issue application is attached hereto as Exhibit 3. The re-issue application sought, among other things, to change "a zoomed-in version of part of the image at the first scale substantially centered around the touch *screen*" to read "a zoomed-in version of part of the image at the first scale substantially centered around the touch *location*." Ex. 3 at 2705-07. The examiner eventually allowed all pending claims, and on August 7, 2012, the Patent Office issued the RE'564 patent. A copy of the RE'564 patent is attached hereto as Exhibit 4.

16. The re-issued claim language of the RE'564 patent is broader than the original claim language of the '203 patent. The '203 patent's original claim recited zooming into the center of the screen but *nowhere else*. The re-issue claims, however, recite zooming into *any touch location* – a concept that Philips removed during prosecution of the '203 patent and added back during re-issue. Figure 2 of the RE'564 patent, which does not appear in the '203 patent, provides a simple example of zooming that would infringe the re-issue claims but not the original claims. Figure 2B shows a zoom on a portion of Figure 2A, after the user touches near the letter "A." Demonstrably, the "zoomed-in version of part of the image" is substantially centered around the "touch location" but *not* around the "touch screen" as a whole. Claim 1 of the RE'564 patent is thus broader than any claim of the '203 patent, and must fall under

35 U.S.C. § 251. The remaining asserted claims all depend from claim 1, and must therefore fall as well.

**Sixth Affirmative Defense**
**Unenforceability Of Uncorrected Claims That Issued In Error**

17. The Patent Office issued the asserted claims of the ’797 patent in error, and Philips failed to seek correction in the 17 years since issuance. Under these circumstances, clear Federal Circuit precedent bars Philips from asserting infringement of these claims without first seeking, and obtaining, the required certificate of correction. The ’797 patent is now expired, so Philips can no longer seek a certificate of correction. Thus, Philips cannot pursue its claims regarding the ’797 patent, and is not entitled to any relief for this patent.

18. The error in the claim is confirmed by the prosecution history of the ’797 patent, a copy of which is attached hereto as Exhibit 5. In particular, Philips filed application no. 08/601,140, which would eventually issue as the ’797 patent, on February 13, 1996. *See* Ex. 5 at 4060. On April 15, 1999, shortly before issuance, Philips filed an amendment to claim 1 under Rule 312, requesting that the term “a gravitation-controlled sensor” be amended to “a gravitation-controlled sensor *means*,” and that “said sensing means” be amended to “said *sensor* means.” Ex. 5 at 4242-43. As Philips explained in its request, these amendments would “provide complete congruity between the ‘sensor’ elements recited on lines 6 and 11.” Ex. 5 at 4242-43.

19. On May 5, 1999, the examiner granted this request, Ex. 5 at 4245-46, and made handwritten edits reflecting these changes to the claim language:

> processing means, [said screen means having] a gravitation-controlled sensor means integrated with said screen means and feeding said data processing means for measuring an acceleration [a] [spatial orientation] of said screen means induced by user manipulation of the screen means, wherein said data processing means have programmed calculating means for under control of a [predetermined range of spatial orientations] screen motion sensed by said ~~sensing~~ sensor means imparting [a non-stationary] an acceleration

Ex. 5 at 4213. A copy of the ’797 patent, as issued, is attached hereto as Exhibit 6.

20. Despite this unequivocal amendment, however, the Patent Office issued the ’797 patent in error, without the amended language. Ex. 6 at 4:41-51 (referring to “a gravitation-controlled sensor” instead of “a gravitation-controlled sensor means,” and “said sensing means” instead of “said sensor means”). In the seventeen years since the patent issued, Philips neither requested nor obtained a certificate of correction.

21. In these actions, Philips now asserts claims 1 and 6 of the ’797 patent. *See* Second Amended Complaint (D.I. 73) at ¶ 106. Because claim 6 depends on claim 1, the error in the ’797 patent affects all asserted claims.

22. Philips cannot assert these claims until they have been corrected by the PTO, which is impossible now that the patent is expired. “When, as here, a claim issues that omits a material limitation, and such omission is not evident on the face of the patent, the patentee cannot assert that claim until it has been corrected by the PTO.” *HW Tech. v. Overstock.com*, 758 F.3d 1331, 1335 (Fed. Cir. 2014). In this instance, the Court cannot retroactively correct the error on the face of the ’797 patent because the correct claim language is not evident from the face of the patent; rather, the correct language is disclosed only in the prosecution history, which cannot be used to retroactively correct claim language. *Group One,*

*Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005). Thus, Philips cannot pursue its claims regarding the ’797 patent, and is not entitled to any relief for this patent.

**Seventh Affirmative Defense**
**Unenforceability Due To Inequitable Conduct**

23. The RE’913 patent is unenforceable due to inequitable conduct before the U.S. Patent & Trademark Office during prosecution of re-issue application no. 13/955,345 (“the ’345 application”), which issued as the RE’913 patent. The ’345 application is attached hereto as Exhibit 7.

24. The ’345 application, filed July 31, 2013, sought re-issue of claims originally granted in U.S. Patent No. 6,885,318 (“the ’318 patent”). Ex. 7 at 3518.

25. The ’345 application claims modified the claims of the ’318 patent by adding language requiring that (a) a primary character is returned in the default state when that character is touched “for a period shorter than a predetermined time period,” and (b) a display of secondary characters appears when the primary character is selected “for a period longer than the predetermined time period.” Ex. 7 at 3520.

26. The examiner issued a Notice of Allowability for the ’345 application on March 12, 2014, a copy of which is attached hereto as Exhibit 8. In the Notice of Allowability, the examiner determined that the added language distinguished the ’345 application claims from the prior art. Ex. 8 at 3750 (indicating that the prior art of record did not teach or suggest an invention wherein “the device displays a default character associated with a key when the key is pressed for a period shorter tha[n] a predetermined time and when the key is pressed for a longer period secondary characters are displayed which are selected by a second key pressing, wherein the keyboard returns to the default state after the second key pressing”).

27. On March 18, 2014, six days after issuance of the Notice of Allowability, the patent owner's attorney, Michael E. Belk, filed a request for continued examination and submitted an information disclosure statement (IDS) disclosing additional prior art references, including Japanese Patent No. 4,019,512 to Sakata ("Sakata '512"). Copies of the IDS and the Sakata reference submitted therewith are attached hereto as Exhibit 9.

28. Sakata '512 issued on December 12, 2007, and is not itself prior art to RE'913 patent, but corresponds to Japanese Unexamined Patent Application Publication No. 2000-56912 ("Sakata Application"), which was published on February 25, 2000.

29. The Sakata Application is prior art to the RE'913 patent.

30. Attorney Belk included in the IDS the Sakata '512 reference in the original Japanese, a cover page of Sakata '512 with the publication date of the Sakata Application circled, and what appears to be a machine translation of Sakata '512 from Thomson Reuters. Ex. 9 at 3789.

31. On information and belief, the contents of the Sakata '512 patent and the corresponding published Sakata Application are substantively the same, and Attorney Belk submitted the Sakata '512 patent intending that it represent the contents of the Sakata Application prior art.

32. As described in the submitted machine translation, the Sakata Application discloses a technique for presenting "[a] character set . . . over a touch-type display screen in a tabular form" wherein "[i]ndividual characters can be chosen through a stylus." Ex. 9 at 3793.

33. Moreover, "[b]y contacting one of a special subset of characters in the particular array, a separate menu (18) is brought forward onto the display, from which menu of a

different character set (6B) can be generated." *Id.* The translation discloses four embodiments for carrying out the described invention. *Id.* at 3801-05.

34. Along with the Sakata '512 reference itself, Attorney Belk attached three pages containing reproductions of figures 10-12 from the reference, annotated with descriptions, commentary, and argument concerning the disclosures of the Sakata Application. As indicated in the machine translation provided, figures 10-12 correspond to the first embodiment of the invention disclosed by Sakata. Ex. 9 at 3804.

35. The first annotated page, reproduced below, includes figures 10 and 11, as well as argument to the PTO purporting to distinguish Sakata's disclosures from the applicant's pending claims. It begins with a sentence stating, "[a]ctually the invention [Sakata] didn't disclose concept of 'pre-determined time'." Ex. 9 at 3790.




Actually the invention didn't disclose concept of 'pre-determined time'. However, it disclosed similar concept to select secondary character corresponding to one key button.

Figure 11 disclosed a example of the invention, if user select character 'n' in a keyboard display by using pen or his finger, then selectable other characters are displayed along with original character( in this case 'n' ).

So, if user takes his pen off while selecting 'n' then original character(primary character) is selected.

36. The third annotated page, reproduced below, includes figure 11 and restates the argument that Sakata does not disclose a timing requirement, stating that "[t]he patent doesn't disclose timing concept, but selecting secondary character via primary character of keyboard is obvious in light of the invention." *Id.* at 3792.




When user selects one of the character of the keyboard, primary character is selected basically. And user has to move his pen to select secondary character.

The patent doesn't disclose timing concept, but selecting secondary character via primary character of keyboard is obvious in light of the invention.

37. The statement that Sakata "doesn't disclose the timing concept" is incorrect. Although the first embodiment of Sakata, illustrated in figures 10 and 11, does not disclose a timing concept, the third embodiment does, in fact, disclose such a concept.

38. The third embodiment of Sakata describes a variation in which a menu of secondary characters is displayed after a primary character key has been held for a fixed time period. On information and belief, Attorney Belk was aware the third embodiment of Sakata disclosed a timing concept when he submitted Sakata and his accompanying arguments to the PTO.

39. Given that the examiner cited the purported absence in the prior art of a "device [that] displays a default character associated with a key when the key is pressed for a

period shorter tha[n] a predetermined time and when the key is pressed for a longer period secondary characters are displayed which are selected by a second key pressing" as the reason for allowance of the RE'913 claims, Sakata's third embodiment, which expressly disclosed this precise feature, was highly material to patentability.

40. By stating that "the invention didn't disclose [sic] concept of 'pre-determined time'" and "[t]he patent doesn't disclose [sic] timing concept," Attorney Belk materially misrepresented the contents of the Sakata Application to the PTO.

41. Moreover, by omitting any discussion of the Sakata Application's third embodiment in his discussion of the reference's relevance to the pending claims, and in fact directing attention away from that embodiment and toward a less relevant embodiment, Attorney Belk withheld material information regarding the patentability of the RE'913 claims.

42. On information and belief, but for Attorney Belk's misrepresentations and omissions regarding the Sakata Application, the RE'913 claims would not have issued. On information and belief, Attorney Belk's material misrepresentations and omissions regarding the Sakata Application were willful and done with specific intent to mislead or deceive the PTO.

43. Attorney Belk filed the IDS disclosing the Sakata Application only six days after the examiner had issued a notice of allowability identifying the purported absence of in the prior art of a "device [that] displays a default character associated with a key when the key is pressed for a period shorter tha[n] a predetermined time and when the key is pressed for a longer period secondary characters are displayed which are selected by a second key pressing" as the reason for allowance of the RE'913 claims.

44. Attorney Belk's description of the Sakata Application in the attached annotations directed the examiner's attention to a single, less relevant embodiment that did not

disclose the features identified in the examiner's notice of allowability, yet he characterized these discussions as applying to the "invention" and "patent" of Sakata generally. His description of Sakata was intentionally selective, and failed to acknowledge that Sakata disclosed additional embodiments, including the third embodiment that taught the same features the examiner had focused on in his notice of allowance. Moreover, of the four foreign patent references identified in the IDS, Sakata was the only one for which Attorney Belk submitted his own arguments in addition to a translation.

45. On information and belief, Attorney Belk took the above actions for the purpose of deterring the examiner from undertaking a thorough review of Sakata and instead directing the examiner's attention to only an irrelevant embodiment of Sakata. On information and belief, Attorney Belk acted with specific intent to mislead or deceive the PTO. The single most reasonable inference able to be drawn from the facts and circumstances surrounding Attorney Belk's misrepresentation of Sakata is that Attorney Belk acted with specific intent to mislead or deceive the PTO.

**Eighth Affirmative Defense**
**Prosecution History Estoppel**

46. Philips is estopped from construing the claims of the patents-in-suit to cover or include, either literally or by application of the doctrine of equivalents, methods used or devices manufactured, used, imported, sold, or offered for sale by Acer because of admissions, amendments, and statements to the USPTO during prosecution of the applications leading to the issuance of the patents-in-suit or related family members.

**Ninth Affirmative Defense**
**License, Estoppel, Exhaustion, and/or Waiver**

47. Upon information and belief, Philips' allegations of infringement of the patents-in-suit are barred in whole or in part by the defenses of license (either express or implied), estoppel, exhaustion, and/or waiver.

48. In particular, Acer purchases component parts from Qualcomm, Inc., and incorporates those components into certain accused products.

49. On information and belief, Qualcomm has been a Philips licensee since 1998, and the Qualcomm/Philips agreement grants Qualcomm, its customers, and certain third-party beneficiaries rights to practice the '114, '695, and '806 patents free from the threat of lawsuit by Philips.

50. As a third-party beneficiary to the Qualcomm/Philips license, Acer is licensed to practice the '114, '695, and '806 patents.

51. Furthermore, on information and belief, Philips signed the "HDCP License Agreement" (last revised November 28, 2012) and is an "HDCP Licensed Adopter." Acer similarly entered into the "HDCP Adopters Only Agreement." On information and belief, the HDCP License Agreement that Philips signed includes a non-assert provision, under which Philips agrees not to assert or maintain claims of patent infringement under any Necessary Claims embodied in the HDCP Specification, for activities or products for which any Fellow Adopter has been granted a license. Because Philips is construing claims of the '819 and '809 patents to read directly on the current version of the HDCP Specification, the asserted claims of the '819 and '809 patents are Necessary Claims and Acer has a license to the '819 and '809 patents.

52. Furthermore, on information and belief, Philips was a participating member of the SYMM Working Group for Synchronized Multimedia Integration Language (SMIL), which enables authoring of interactive audiovisual presentations. On information and belief, Philips actively participated in Working Group discussions regarding SMIL before filing an application for on overlapping technology which became the ’806 patent. On information and belief, though Philips contributed and was privy to the discussions giving rise to SMIL recommendations, it simultaneously sought the ’806 patent, failed to disclose the pending application as required to the SMIL working group, and subsequently withdrew from the Group to avoid its patent disclosure and RAND licensing obligations.

**Tenth Affirmative Defense**
**Intervening Rights**

53. Philips’ allegations of infringement or damages of the patents-in-suit are barred in whole or in part by the defense of intervening rights, both absolute and equitable, under 35 U.S.C. § 252. For instance, before filing this case, Philips substantively amended the asserted claims of the RE’913 patent, the RE’564 patent, and the RE’006 patent during re-issue proceedings. Before the amended claims re-issued, Acer had already begun (or had made substantial preparations to begin) making, using, selling, offering for sale or importing certain accused products. As a result, Acer was vested with rights to continue its activities with respect to these accused products, without recourse for Philips.

**Eleventh Affirmative Defense**
**Unclean Hands**

54. Philips’ misconduct prior to this litigation, during this litigation, before the Patent Office, and in licensing negotiations has rendered certain of the patents-in-suit unenforceable due to unclean hands.

55. As explained above, the asserted claims of the ’797 patent issued in error and Philips cannot pursue them because it has not received a certificate of correction. Philips was aware of this issue during the ’797 patent’s prosecution, and brought the error to the attention of the Patent Office prior to the patent’s issuance, but Philips never corrected the error once the patent issued with erroneous language. Nevertheless, Philips has falsely asserted during licensing negotiations and in this litigation that the patent is valid and enforceable against Acer.

56. In addition, as explained below, Philips lacks standing to assert the claims of the ’114 patent due to a prior assignment of rights to Sharp Corporation. Nevertheless, Philips has falsely asserted during licensing negotiations and in this litigation that it has standing to unilaterally assert the ’114 patent against Acer.

57. In addition, Philips voluntarily amended the claims of the RE’564 patent and the RE’913 patent in re-issue proceedings that took place outside the two-year period for a broadening re-issue specified by 35 U.S.C. § 251, and improperly enlarged the scope of the original claims of these patents through amendments. Nevertheless, Philips has falsely asserted during licensing negotiations and in this litigation that these patent are valid and enforceable against Acer.

58. In addition, Philips’ Second Amended Complaint concedes that the RE’913 patent re-issued on May 27, 2014. Philips substantively amended the asserted claims of the RE’913 patent during re-issue proceedings, thereby waiving entitlement to damages for this patents any earlier than its re-issue date, pursuant to 35 U.S.C. § 252. Nevertheless, Philips has falsely asserted in its Second Amended Complaint that Acer had notice of the RE’913 patent on May 31, 2013, before the RE’913 patent’s issue date.

59. As explained above, Philips was a participating member of the SYMM Working Group for Synchronized Multimedia Integration Language (SMIL), which enables authoring of interactive audiovisual presentations. On information and belief, Philips actively participated in Working Group discussions regarding SMIL before filing an application for on overlapping technology which became the ’806 patent. On information and belief, though Philips contributed and was privy to the discussions giving rise to SMIL recommendations, it simultaneously sought the ’806 patent, failed to disclose the pending application as required to the SMIL working group, and subsequently withdrew from the Group to avoid its patent disclosure and RAND licensing obligations.

**Twelfth Affirmative Defense**
**Lack Of Standing Due To Failure To Join A Necessary Party**

60. Upon information and belief, Sharp Corporation (“Sharp”) is a necessary party to this case because it is co-owner of the ’114 patent, having been assigned an ownership stake in the ’114 patent by Philips before Plaintiffs filed the earliest Complaint in this case. Therefore, Plaintiffs lack standing to pursue their claims regarding the ’114 patent unless and until Sharp voluntarily joins this case as co-plaintiff.

61. According to Patent Office assignment records (attached hereto as Exhibit 10), Philips assigned 90 patents, including the ’114 patent, to itself and Sharp on September 8, 2009. Ex. 10 at 1, 5-7. Patent Office records indicate no subsequent assignment of the ’114 patent from Sharp back to Philips. Therefore, on information and belief, Sharp has been co-owner of the ’114 patent since September 8, 2009. Sharp therefore held an ownership stake in the ’114 patent when Plaintiffs filed the earliest Complaint in this case, and continues to own that stake today.

62. Accordingly, under Federal R. Civ. P. 19(b), Sharp is a necessary party in this case, and Philips lacks standing to assert the ’114 patent unless Sharp voluntarily joins as plaintiff, because “the substantive right to enforce the patent does not belong unilaterally to each co-owner, but requires all of the co-owners’ agreement,” and “[a]bsent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing.” *STC.UNM v. Intel Corp.* 767 F.3d 1351, 1354 (Fed. Cir. 2014) (quoting *Israel Bio-Eng’g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007)). Thus, Philips lacked standing at the time it filed its original Complaint to pursue its claims regarding the ’114 patent, and the Court lacks subject matter jurisdiction to hear Philips’ claims as to the ’114 patent unless Sharp voluntarily joins as co-plaintiff.

**Thirteenth Affirmative Defense**
**Patent Misuse**

63. Philips’ misconduct in this litigation has rendered certain of the patents-in-suit unenforceable under the doctrine of patent misuse.

64. Upon information and belief, Philips has knowingly undertaken to enforce the claims of the ’797 patent against Acer while knowing that Acer has not infringed any valid or enforceable claim of the ’797 patent. As explained above, the asserted claims of the ’797 patent issued in error and Philips cannot pursue them because it has not received a certificate of correction. Philips was aware of this issue during the ’797 patent’s prosecution, and brought the error to the attention of the Patent Office prior to the patent’s issuance, but Philips never corrected the error once the patent issued with erroneous language. Additionally, Acer brought this issue to Philips’ attention as part of Defendants’ Joint Initial Invalidity Contentions, served in this case on September 30, 2016. Nevertheless, Philips asserted falsely asserted during licensing negotiations and in this litigation that the ’797 patent is valid and enforceable against

Acer. Based upon the foregoing conduct of Philips, this is an exceptional case under 35 U.S.C. § 285.

**Fourteenth Affirmative Defense**
**Laches**

65. Philips' claim for damages, if any, against Acer for alleged infringement of the patents-in-suit is limited by the doctrine of laches.

**Fifteenth Affirmative Defense**
**Limitation on Damages**

66. Philips' claim for damages, if any, against Acer for alleged infringement of the patents-in-suit is statutorily limited, in whole or in part, by the provisions of 35 U.S.C. §§ 286, 287, and/or 288, as well as by any applicable obligation to license one or more of the patents-in-suit on terms that are fair, reasonable, and non-discriminatory.

**Sixteenth Affirmative Defense**
**Failure to Mark / Failure to Mitigate**

67. Philips' case and/or damages is limited in whole or in part by its failure to mark and/or failure to mitigate, including without limitation Philips' failure to mark its own products with the numbers of the patents-in-suit or to police the marking of its customers and licensees.

**Seventeenth Affirmative Defense**
**No Willful Infringement**

68. Philips is not entitled to seek enhanced damages or attorneys' fees for willful and deliberate infringement.

**Eighteenth Affirmative Defense**
**No Fees**

69. Philips is not entitled to seek fees under 35 U.S.C. § 288.

**Nineteenth Affirmative Defense**
**Improper Venue**

70. Venue is improper under 28 U.S.C. § 1400(b), which states that patent infringement actions may be brought only "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." For corporate entities, a defendant "resides" in its state of incorporation. Defendants are not incorporated in Delaware, and do not have a "regular and established place of business" in Delaware. Under § 1400(b), venue is therefore improper in this District. The Supreme Court has recently granted certiorari with respect to the decision in *In re TC Heartland*, 821 F.3d 1338 (Fed. Cir. 2016), to address this issue. Pending resolution of this issue of law, Defendants object to venue in this district.

**Acer's Prayer for Relief**

Acer respectfully requests that the Court to enter judgment as follows:

A. Finding that Defendants have not infringed, directly or indirectly, any of the patents-in-suit;

B. Finding that each of the patents-in-suit is invalid and unenforceable under applicable law;

C. Directing that Plaintiffs recover nothing on the Second Amended Complaint;

D. Finding that this is an exceptional case under 35 U.S.C. § 285, and awarding Defendants their attorneys' fees and costs of suit; and

E. Awarding such other relief as the Court deems just and proper.

**Jury Demand**

Acer hereby demands a jury trial on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
Eleanor G. Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
etennyson@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Matthew Warren
Patrick Shields
Brian Wikner
Erika Mayo
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, CA 94114
(415) 895-2940

Kai Tseng
Hsiang ("James") H. Lin
Craig Kaufman
TECHKNOWLEDGE LAW GROUP LLP
100 Marine Parkway, Suite 200
Redwood Shores, CA 94065
(650) 517-5200

December 22, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2016, upon the following in the manner indicated:

Michael P. Kelly, Esquire
Daniel M. Silver, Esquire
Benjamin A. Smyth, Esquire
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Michael P. Sandonato, Esquire
John D. Carlin, Esquire
Daniel A. Apgar, Esquire
Jonathan M. Sharret, Esquire
Robert S. Pickens, Esquire
Jaime F. Cardenas-Navia, Esquire
Christopher M. Gerson, Esquire
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, NY 10104-3800
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Steven J. Balick, Esquire
Andrew C. Mayo, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
*Attorneys for Intervenor Microsoft Corporation*

*VIA ELECTRONIC MAIL*

Chad S. Campbell, Esquire
Jared W. Crop, Esquire
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
*Attorneys for Intervenor Microsoft Corporation*

*VIA ELECTRONIC MAIL*

Judith Jennison, Esquire
Christina McCullough, Esquire
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
*Attorneys for Intervenor Microsoft Corporation*

*VIA ELECTRONIC MAIL*

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)