IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KONINKLIJKE PHILIPS N.V. and U.S. PHILIPS CORPORATION, | ) ) ) | |
| Plaintiffs/Intervenor-Defendants/Counterclaim Plaintiffs in Intervention, | ) ) ) ) ) | C.A. No. 15-1170 (GMS) |
| v. | ) ) | REDACTED - PUBLIC VERSION |
| ACER INC. and ACER AMERICA CORPORATION, | ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| MICROSOFT CORPORATION, | ) ) ) | |
| Intervenor-Plaintiff/ Counterclaim Defendant in Intervention, | ) ) ) ) | |
| and | ) ) | |
| MICROSOFT MOBILE INC., | ) ) | |
| Counterclaim Defendant in Intervention. | ) ) ) | |

**REPLY BRIEF IN SUPPORT OF ACER INC. AND
ACER AMERICA CORPORATION'S
<u>MOTION TO STAY THE CASE PENDING *INTER PARTES* REVIEW</u>**

OF COUNSEL:

Matthew Warren
Patrick Shields
Brian Wikner
Erika Mayo
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, CA 94114
(415) 895-2940

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Eleanor G. Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
etennyson@mnat.com

*Attorneys for Defendants Acer Inc. and Acer America Corporation*

Kai Tseng
Hsiang ("James") H. Lin
Craig Kaufman
TECHKNOWLEDGE LAW GROUP LLP
100 Marine Parkway, Suite 200
Redwood Shores, CA 94065
(650) 517-5200

Original Filing Date: February 24, 2017
Redacted Filing Date: March 2, 2016

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 2

    A.    Philips Does Not Compete with Defendants' Accused Products. ........................... 2

        1.    Philips Has Admitted It Does Not Compete with Defendants .................... 2

        2.    Philips "Branded" Products Do Not Compete with the Accused Products .................................................................................... 2

        3.    Philips Has Not Shown Any Market Injury ................................................ 4

    B.    The IPRs and Motion to Stay Are Timely. ............................................................ 5

        1.    This Case Is Still in Its Early Stages ........................................................... 5

        2.    There Is No Undue Prejudice to Philips ..................................................... 6

        3.    Acer's Motion to Stay Is Timely and Should Be Decided Now ................. 7

    C.    The Entire Action Should Be Stayed. .................................................................... 8

        1.    A Stay Will Simplify the Issues Before This Court .................................... 8

        2.    The Balance of Equities Favors a Stay ....................................................... 9

        3.    Philips' Proposed Partial Stay Would Turn One Complex Litigation into Two Complex Litigations ............................................... 10

CONCLUSION .................................................................................................................... 10

Page(s)

*Cases*

*AstraZeneca AB v. Aurobindo Pharma Ltd.*,
    C.A. No 14-664, D.I. 346 (D. Del. Aug. 23, 2016) ....................................................... 5

*Belden Techs., Inc. v. Superior Essex Commc'ns LP*,
    C.A. No. 08-63, D.I. 225, 2010 WL 3522327 (D. Del. Sept. 2, 2010) ............................... 5

*Bonutti Research, Inc. v. Lantz Med., Inc.*
    No. 14-609, D.I. 95, 2015 WL 3386601 (S.D. Ind. May 26, 2015) .................................. 6

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
    C.A. No. 12-1107, D.I. 45, 2014 WL 1369721 (D. Del. Apr. 7, 2014) ......................... 6, 7

*Cooper Notification, Inc. v. Twitter, Inc.*,
    C.A. No. 09-865, D.I. 81, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ...................... 9-10

*Davol, Inc. v. Atrium Med. Corp.*,
    C.A. No. 12-958, D.I. 27, 2013 WL 3013343 (D. Del. June 17, 2013) ............................. 4

*IMS Health Inc. v. Symphony Health Solutions Corp.*,
    C.A. No. 13-2071, D.I. 179 (D. Del. May 29, 2015) ......................................................... 5

*In re Bear Creek Techs., Inc.*,
    MDL No. 12-2344, D.I. 133 (D. Del. July 17, 2013) ........................................................ 9

*Intellectual Ventures I LLC v. Toshiba Corp.*,
    __ F. Supp. 3d __, C.A. No. 13-453, 2016 WL 7341713 (D. Del. Dec. 19, 2016) ............ 9

*Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*,
    817 F.3d 1293 (Fed. Cir. 2016) ......................................................................................... 9

*Trover Group, Inc. v. Dedicated Micros USA*,
    No. 13-1047, D.I. 102, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015) ............................. 6

*U.S. Philips Corp. v. Eastman Kodak Co.*,
    C.A. No. 06-251, D.I. 221, 2008 WL 11240260 (D. Del. Mar. 7, 2008) ..................... 5-6, 7

*Statutes*

28 U.S.C. § 1746 ........................................................................................................... 2

35 U.S.C. § 315(b) ....................................................................................................... 5

**INTRODUCTION**

Philips' Answering Brief is a compilation of speculation, self-contradiction, and sleight of hand that, under examination, does nothing to tip the balance of factors that favors a stay. Realizing it cannot show prejudice because it has no competing products, Philips tells an elaborate story of how it nevertheless competes with Acer's accused products. Unfortunately for Philips, that story is a fable. Philips' "branded" *televisions* and *Blu-ray* players do not compete in the same market as the accused *smartphones* and *tablet computers*. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Philips already admitted at a prior hearing in this case that it does not compete with Defendants' accused products. Nothing in Philips' revisionist declarations changes that admission.

Philips also fails to identify any undue prejudice a stay would cause Philips in this litigation. Although Philips complains that the IPRs should have been filed earlier, Google, HTC, and Microsoft all filed their respective IPRs within statutory time limits, and Acer promptly moved for a stay. In the meantime, there have been no significant occurrences in this case. No significant discovery has taken place, and no substantive rulings have been made. This belies both Philips' claim of delay and any suggestion of improper tactical advantage.

Without any harm to Philips in either the market or this litigation, the balance of equities favors a stay. As Philips concedes, these related actions are so large and complex that an omnibus trial of all issues currently in the case is impracticable. A stay pending the IPR proceedings would simplify the long list of complex issues to be tried here. The IPRs cover nine of the eleven asserted patents and eight of the nine accused functionalities. Final resolution of the IPRs will likely eliminate one or more asserted patents and leave a more manageable case to be tried. In contrast, denial of a stay (or Philips' proposed partial stay) would result in wasteful

1

and duplicative parallel litigation, and would risk inconsistent results. Acer therefore respectfully requests a stay of this action in its entirety.

## ARGUMENT

### A. Philips Does Not Compete with Defendants' Accused Products

#### 1. Philips Has Admitted It Does Not Compete with Defendants

One of the main thrusts of Philips' Opposition is that a stay would allegedly harm Philips because Philips and Defendants are "direct competitors." Opp. at 2, 7–10, 14–15. In making this argument, Philips never addresses or even acknowledges its admission earlier in this case that it does *not* compete with Defendants. At a hearing on October 20, 2016, the Court asked Philips about the difference between Philips and an NPE. Philips responded by admitting that it does not sell products that directly compete with Defendants' accused products:

> MR. CARLIN: This portfolio of patents is not a portfolio of patents that Phillips has acquired. These patents all grew out of real research and development that was supporting actual business units.
>
> So while the patents do have application to products that the defendants are selling, and *we are not specifically selling products that directly compete with the particular products that are accused of infringement*, it is not the case that this is a portfolio that we acquired solely for purposes of asserting, and they are not a portfolio of patents which aren't grounded in real research that supported actual products.

D.I. 67 at 43:5–16 (emphasis added). Philips cannot now escape the force of this admission.

#### 2. Philips "Branded" Products Do Not Compete with the Accused Products

Philips' present, contrary argument is based exclusively on the declarations of two Philips employees. D.I. 129, 130. These declarations have no evidentiary value because they are not signed under penalty of perjury, in violation of 28 U.S.C. § 1746. But even if taken at face value, Philips' declarations confirm its original admission: Philips does not compete with Defendants' accused products.

2

Philips' declarations describe products associated with Philips' "Global Brand Licensing" program. Opp. at 7–10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

These "branded" products occupy different markets than the accused smartphones, tablets, and laptop computers. Philips argues its "branded" televisions and Blu-ray players compete with Acer's accused smartphones because they can all be used to watch video content. Opp. at 10. That is not enough. Philips presents no evidence, for example, that consumers actually treat these disparate products as substitutes when making purchasing decisions. The only evidence cited in Philips' declaration is Confidential Exhibit 4, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. D.I. 129, Ex. 4 at 6.

The closest Philips comes to identifying comparable products is its reference to "branded multi-touch displays," which it says "compete with the accused large panel touch-enabled devices of ASUS and Microsoft." Opp. at 10. Even this comparison fails. First, the ASUS SP6540-T Interactive Whiteboard that Philips points to *is not an accused product* and is therefore irrelevant. Second, it is not clear Philips' "branded multi-touch displays" even practice the patents-in-suit. For example, Philips claims that "[f]our of these multi-touch displays support scrolling functionality covered by the '387 and '064 patents." Opp. at 8. But the cited declaration of Andrei Filip, a Philips in-house lawyer, says only that the multi-touch displays "support scrolling functionality." D.I. 130, ¶ 8. The '387 and '064 patents do not claim all

---

[1] Philips consistently describes the products using terms like "Philips branded products" (D.I. 129, ¶ 6) or "[p]roducts offered under the Philips name" (*id.*, ¶ 9), not as "Philips products."

3

"scrolling functionality," which existed long before Philips' patents.[2] Out of the hundreds of accused products in these related cases, Philips has identified, at most, one Microsoft product (Opp. at 10 n.15) that allegedly occupies a market of undefined scope and structure with four or fewer Philips "branded" products, in which Philips has some undefined economic interest and which may or may not practice some of the patents-in-suit. That hardly makes Philips and Defendants "direct competitors."

### 3. Philips Has Not Shown Any Market Injury

The ultimate issue is: will Philips be harmed if a stay prolongs the time during which Acer sells the accused products? Philips does not address this at all. Philips does not explain how sales of Philips' "branded" 75-inch display screen (Opp. Ex. L), or any other "branded" products, will suffer if Acer sells more smartphones.[3] Philips does not even explain the nature or extent of any economic interest Koninklijke Philips N.V. or U.S. Philips Corp. has in sales of "branded" products. Furthermore, Philips declined to seek a preliminary injunction and is not seeking a permanent injunction—an approach that is entirely consistent with Philips' prior admission that it does not compete with Defendants, but which Philips does not even try to reconcile with its new, contradictory position. No matter what economic impact Defendants' accused products may have on Philips, Philips has acknowledged that money damages are an adequate remedy. A stay will not affect Philips' ability to recover such damages.

---

[2] Philips also asserts that one of its "branded" multi-touch displays "includes the content protection system HDCP 2.x covered by the '819 and '809 patents." Opp. at 8. The '819 and '809 patents describe two devices, one for sending content and one for receiving content. The asserted claims relate only to the first device; Philips' one alleged HDCP 2.x-compliant display would appear to be the second device, which would not practice the asserted claims.

[3] As the Court has noted, the structure of the market matters. *Davol, Inc. v. Atrium Med. Corp.*, C.A. No. 12-958, D.I. 27, 2013 WL 3013343, at *3 (D. Del. June 17, 2013) ("[T]he presence of multiple firms in the relevant market may lessen the prospect of undue prejudice . . . ."). If, as Philips asserts, all viewing devices fall into the same market, then tracing any impact of Acer's sales on Philips' "branded" products becomes entirely speculative.

B.  **The IPRs and Motion to Stay Are Timely**

1.  **This Case Is Still in Its Early Stages**

Philips tries to make hay of the fact that the IPRs were filed just under one year after service of Philips' Complaints. Opp. at 2, 4–6, 12–13. There is nothing wrong with that: the governing statute gives parties one full year to file an IPR. 35 U.S.C. § 315(b).[4] Philips does not cite any case where a stay was denied because an IPR was filed close to the deadline.

What does matter in the cases Philips cites is the stage of the litigation when the stay motion is decided. For example, in *IMS Health Inc. v. Symphony Health Solutions Corp.*, C.A. No. 13-2071, D.I. 179, slip op. at 2 n.2 (D. Del. May 29, 2015) (Opp. Ex. A), the Court found a fourteen-month delay in requesting CBM review prejudicial because, by the time the stay motion was heard, fact discovery had closed, expert reports had been served, the Court had already issued a claim construction order, and trial was less than six months away. The Court nevertheless issued a stay based on the likelihood of simplifying the issues and reducing the burden of litigation. *Id*. at 3. Cases that have denied stays were in a much more advanced posture than this one. In *Belden Techs., Inc. v. Superior Essex Commc'ns LP*, C.A. No. 08-63, D.I. 225, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010), requests for reexamination were filed 17 to 20 months after the complaint, by which time discovery was complete, the Court had made summary judgment rulings that disposed of most issues, and trial was set to begin in 11 days. In *AstraZeneca AB v. Aurobindo Pharma Ltd.*, C.A. No. 14-664, D.I. 346, slip op. at 2 n.3 (D. Del. Aug. 23, 2016) (Opp. Ex. V), the IPRs were filed two years into the case; by the time of the stay ruling, discovery was complete and the case was less than one month from trial. In *U.S. Philips Corp. v. Eastman Kodak Co.*, C.A. No. 06-251, D.I. 221, 2008 WL 11240260, at *1 (D. Del.

---

[4] Ten of the IPRs at issue were filed by a third party, Google Inc., which is not subject to the same time limits as parties to these actions. Nevertheless, all of the IPRs at issue were filed within the time limit prescribed by 35 U.S.C. § 315(b).

Mar. 7, 2008), defendants filed a request for reexam after receiving the Court's claim construction order, when trial was less than three months away.[5]

This case is a horse of a different color. Minimal written discovery has occurred, no depositions have been taken, and expert discovery has not begun. Opening *Markman* briefs have yet to be filed. And the trial date is still over fifteen months away. This case therefore more closely resembles *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, C.A. No. 12-1107, D.I. 45, 2014 WL 1369721 (D. Del. Apr. 7, 2014). There, the Court granted a stay where "Defendants' IPR petitions were timely filed between eight months to exactly a year after [plaintiff] served its complaints," because, as here, "the IPR petitions were filed before any significant occurrences and proceedings in the instant cases." *Id.* at *2–3.[6]

### 2. There Is No Undue Prejudice to Philips

Because the case is still in its early stages, Philips cannot show any undue prejudice from the timing of the IPRs or the motion to stay. The only consequence Philips points to is that Defendants have "learn[ed] Philips' infringement and claim construction positions." Opp. at 12–13. Philips' claim construction positions will be revealed in the IPR proceedings anyway. And even Philips concedes that Defendants are entitled to know Philips' infringement

---

[5] The out-of-district cases Philips cites were also more advanced than this case. *See Bonutti Research, Inc. v. Lantz Med., Inc.*, No. 14-609, D.I. 95, 2015 WL 3386601, at *2 (S.D. Ind. May 26, 2015) (several depositions had been taken, and *Markman* briefs had already been submitted); *Trover Group, Inc. v. Dedicated Micros USA*, No. 13-1047, D.I. 102, 2015 WL 1069179, at *3 (E.D. Tex. Mar. 11, 2015) (stay denied without prejudice where "substantial" discovery had been completed, claim construction briefing and the *Markman* hearing were complete, and trial was less than six months away).

[6] Philips argues that Defendants could have filed IPRs earlier because some of the patents-in-suit were identified to some of the Defendants in pre-suit notice letters. Opp. at 2, 5 & n.4. The suggestion is not credible. ████████████████████████████████████████ Acer could hardly be expected to file invalidity challenges against all of them, or to guess which ones Philips would eventually assert, two years before litigation began.

6

positions before making decisions about invalidity strategy. Opp. at 19 (distinguishing *Bonutti Skeletal* on the ground that the plaintiff there did not timely disclose its infringement contentions).

Truly inappropriate litigation tactics would generally fall along the lines of seeking a stay after an adverse ruling. *See, e.g.*, *Bonutti Skeletal*, 2014 WL 1369721, at *3 ("[T]he absence of any events or rulings in the instant action that could be potentially harmful to the Defendants' positions suggests that the Defendants' stay request is not an inappropriate litigation tactic."); *U.S. Philips*, 2008 WL 11240260, at *1 (request for reexamination filed two weeks after the Court issued a claim construction order). Philips cannot identify anything of the kind here, because the Court has not yet made any substantive rulings in these cases.

Philips argues there should be no stay because Acer supposedly "coordinated its IPR filings with Google, Microsoft, and the other Defendants in order to gain tactical advantage." Opp. at 2. This is a red herring; whether the IPRs were the work of one defendant, all of them, or none of them makes no difference to the stay analysis. In any event, Philips' conspiracy theory is based on nothing but speculation. Philips observes that Defendants have formed a joint defense group and coordinated filings in these related district court cases. Opp. at 4. Those things are not only quite common in cases of this magnitude, they are exactly what the parties should do to make the district court litigation more manageable. They have no bearing on the IPR proceedings, and are not reasons to deny a stay.

3. **Acer's Motion to Stay Is Timely and Should Be Decided Now**

Philips takes inconsistent positions with respect to the timing of Acer's Motion to Stay. On the one hand, Philips complains that Acer committed "inexcusable" delay because it "waited nearly another **two months**" to file its motion after Google filed the first IPR petitions.

7

Opp. at 12 (emphasis in original).  On the other hand, Philips argues the motion is not yet ripe, and that the Court should wait another four to six months, until the PTAB makes institution decisions, before ruling.  Opp. at 19–20.  Philips is wrong on both counts.

Google filed its IPR petitions between December 5 and 9, 2016.  D.I. 115 (Opening Brief), Exs. C–L.  Acer filed its Motion to Stay on January 27, 2017.  The seven intervening weeks included not only major holidays, but also two weeks of meet-and-confer discussions with Philips regarding the proposed stay.  No significant case developments happened in the meantime.  Under the circumstances, Acer's motion is timely.

It is also ripe.  Waiting four to six months to rule, until after the PTAB makes institution decisions, would greatly increase the likelihood of wasted resources, duplication of effort, and inconsistencies with the IPR proceedings.  As Philips concedes, although no depositions have yet been taken, some inventor depositions are being scheduled in the near future.  Opp. at 16.  Opening *Markman* briefs have not yet been filed, but will be soon.  The *Markman* hearing is scheduled for May 3.  A stay would be most beneficial now, before the Court and the parties expend additional resources on these tasks.

As shown in Acer's Opening Brief, recent PTAB statistics show a high likelihood of institution.  D.I. 115 at 11–12.  Philips does not take issue with these statistics, except to argue that three of the twenty-six references cited in the IPRs were considered during prosecution.  Opp. at 14.  But that only emphasizes that the vast majority of the references were not.  Given the high likelihood of institution, the earlier a stay is issued, the more beneficial it will be.

    **C.**    **The Entire Action Should Be Stayed**

        **1.**    **A Stay Will Simplify the Issues Before This Court**

Philips concedes that the case is currently too large and complex to be tried in its present form. Opp. at 19–20. This only confirms that a stay pending resolution of the IPRs would benefit the Court and the parties by making this litigation more manageable. If the IPRs are successful, claims or even entire patents asserted in this case could be eliminated. If the PTAB reviews and upholds the patents, prior art references will be eliminated from this case by virtue of estoppel. In addition, the Court and the parties would gain the benefit of the PTAB's expertise and analysis on claim construction and other patent issues. Either way, the case is simplified. There is also the possibility that the asserted claims could be amended during the IPR proceedings, thus presenting the Court and parties in this case with a moving target until those proceedings are concluded. Philips' Opposition does not address this.

Philips argues that Defendants have not agreed to a broad enough form of estoppel. Opp. at 16–17. But Defendants have offered the same scope of estoppel this Court has found appropriate in other cases. *In re Bear Creek Techs., Inc.*, MDL No. 12-2344, D.I. 133, slip op. at 7 n.8 (D. Del. July 17, 2013). It is also consistent with the scope of IPR reference estoppel as interpreted in this District and in the Federal Circuit. *See Intellectual Ventures I LLC v. Toshiba Corp.*, ___ F. Supp. 3d ___, C.A. No. 13-453, 2016 WL 7341713, at *13 (D. Del. Dec. 19, 2016) (citing *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293 (Fed. Cir. 2016)).[7]

### 2. The Balance of Equities Favors a Stay

Philips misreads the law when it asserts that "[t]he party seeking a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that a stay . . . will work damage to someone else." Opp. at 11 (quoting *Cooper*

---

[7] Acer agrees to be estopped with respect to the HTC and Microsoft petitions to the same extent it has agreed for the Google petitions—that is, it will be estopped from asserting any ground of invalidity that is actually raised and finally adjudicated in those IPR proceedings.

9

*Notification, Inc. v. Twitter, Inc.*, C.A. No. 09-865, D.I. 81, 2010 WL 5149351, at *2 (D. Del. Dec. 13, 2010)). As *Cooper* itself makes clear, this is not a separate legal requirement. *Cooper*, 2010 WL 5149351, at *2 ("Nowhere did the Court state that a showing of hardship or inequity in proceeding with litigation is an absolute requirement for a stay."). Rather, it simply means that the balance of equities regarding a proposed stay is always relevant. *Id.*

In this case, that balance favors a stay. As shown above, Philips has failed to show that a stay would cause it undue prejudice either in the market or in this litigation. Proceeding with litigation and IPRs in parallel, however, would very likely result in duplication of effort, waste of resources, and potentially inconsistent results, all of which would be prejudicial to Acer.

### 3. Philips' Proposed Partial Stay Would Turn One Complex Litigation into Two Complex Litigations

Philips argues that a partial stay would be preferable to a complete stay because the case is too large to be adjudicated in a single trial anyway. Opp. at 19–20. Staging the case for multiple trials is one thing; breaking the case into multiple parallel litigations in the early stages of discovery is quite another. Although the asserted patents are, for the most part, unrelated, the parties and accused products are largely the same across patents. Philips' proposal of a partial stay would thus create a situation where there are at least two parallel complex cases involving the same parties and the same products, proceeding on different schedules. It would be far more efficient to keep all claims on the same schedule by staying the entire action.

## **CONCLUSION**

For these reasons, Acer respectfully requests that the Court stay this action pending final resolution of the IPRs filed by Google, HTC, and Microsoft against the patents-in-suit.

|  | Morris, Nichols, Arsht & Tunnell LLP |
|---|---|
|  | /s/ *Rodger D. Smith II* |
|  | Rodger D. Smith II (#3778)<br>Eleanor G. Tennyson (#5812)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>rsmith@mnat.com<br>etennyson@mnat.com |
| OF COUNSEL: | *Attorneys for Defendants Acer Inc. and Acer America Corporation* |
| Matthew Warren<br>Patrick Shields<br>Brian Wikner<br>Erika Mayo<br>Warren Lex LLP<br>2261 Market Street, No. 606<br>San Francisco, CA 94114<br>(415) 895-2940 |  |
| Kai Tseng<br>Hsiang ("James") H. Lin<br>Craig Kaufman<br>TechKnowledge Law Group LLP<br>100 Marine Parkway, Suite 200<br>Redwood Shores, CA 94065<br>(650) 517-5200 |  |
| February 24, 2017 |  |