**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Plaintiffs,**

**v.**

**ASUSTEK COMPUTER INC.,**
**ASUS COMPUTER INTERNATIONAL,**

**Defendants.**

Case No.: 15-1125-GMS

JURY TRIAL DEMANDED

**MICROSOFT CORPORATION,**

**Intervenor-Plaintiff,**

**v.**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants.**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants/Counterclaim Plaintiffs in Intervention**

**v.**

**MICROSOFT CORPORATION**

**Intervenor-Plaintiff/Counterclaim Defendant in Intervention**

**AND**

**MICROSOFT MOBILE INC.**

**Counterclaim Defendant in Intervention**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Plaintiffs,**

**v.**

**VISUAL LAND, INC.**

**Defendant.**

Case No.: 15-1127-GMS

JURY TRIAL DEMANDED

**MICROSOFT CORPORATION,**

**Intervenor-Plaintiff,**

**v.**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants.**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants/Counterclaim Plaintiffs in Intervention**

**v.**

**MICROSOFT CORPORATION**

**Intervenor-**

**Plaintiff/Counterclaim Defendant in Intervention**

**AND**

**MICROSOFT MOBILE INC.**

**Counterclaim Defendant in Intervention**

**KONINKLIJKE PHILIPS N.V., U.S. PHILIPS CORPORATION,**

**Plaintiffs,**

**v.**

**DOUBLE POWER TECHNOLOGY, INC., ZOWEE MARKETING CO., LTD., SHENZEN ZOWEE TECHNOLOGY CO., LTD.**

**Defendants.**

Case No.: 15-1130-GMS

JURY TRIAL DEMANDED

**MICROSOFT CORPORATION,**

**Intervenor-Plaintiff,**

**v.**

**KONINKLIJKE PHILIPS N.V., U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants.**

**KONINKLIJKE PHILIPS N.V., U.S. PHILIPS CORPORATION,**

**Intervenor-**

**Defendants/Counterclaim Plaintiffs in Intervention**

**v.**

**MICROSOFT CORPORATION**

**Intervenor-Plaintiff/Counterclaim Defendant in Intervention**

**AND**

**MICROSOFT MOBILE INC.**

**Counterclaim Defendant in Intervention**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Plaintiffs,**

**v.**

**YIFANG USA, INC. D/B/A E-FUN, INC.,**

**Defendant.**

Case No.: 15-1131-GMS

JURY TRIAL DEMANDED

**MICROSOFT CORPORATION,**

**Intervenor-Plaintiff,**

**v.**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants.**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants/Counterclaim Plaintiffs in Intervention**

**v.**

**MICROSOFT CORPORATION**

**Intervenor-Plaintiff/Counterclaim Defendant in Intervention**

**AND**

**MICROSOFT MOBILE INC.**

**Counterclaim Defendant in Intervention**

**KONINKLIJKE PHILIPS N.V.,**
**U.S. PHILIPS CORPORATION,**

**Plaintiffs,**

**v.**

**ACER INC.,**
**ACER AMERICA CORPORATION,**

**Defendants.**

Case No.: 15-1170-GMS

JURY TRIAL DEMANDED

**MICROSOFT CORPORATION,**

**Intervenor-Plaintiff,**

**v.**

**KONINKLIJKE PHILIPS N.V.,
U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants.**

**KONINKLIJKE PHILIPS N.V.,
U.S. PHILIPS CORPORATION,**

**Intervenor-Defendants/Counterclaim Plaintiffs in Intervention**

**v.**

**MICROSOFT CORPORATION**

**Intervenor-Plaintiff/Counterclaim Defendant in Intervention**

**AND**

**MICROSOFT MOBILE INC.**

**Counterclaim Defendant in Intervention**

**KONINKLIJKE PHILIPS N.V.,
U.S. PHILIPS CORPORATION,**

**Plaintiffs,**

**v.**

**HTC CORP.,
HTC AMERICA, INC.**

**Defendants.**

Case No.: 15-1126-GMS

JURY TRIAL DEMANDED

| | |
|---|---|
| **KONINKLIJKE PHILIPS N.V.,**<br>**U.S. PHILIPS CORPORATION,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**SOUTHERN TELECOM, INC.,**<br><br>**Defendant.** | Case No.: 15-1128-GMS<br><br>JURY TRIAL DEMANDED |

**DECLARATION OF PHILIP GREENSPUN, PH.D.**

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ....................................................................................................1

II. QUALIFICATIONS ..................................................................................................1

III. MATERIALS CONSIDERED ..................................................................................2

IV. LEGAL STANDARDS ..............................................................................................2

V. LEVEL OF ORDINARY SKILL IN THE ART .......................................................4

A. U.S. Patent No. 5,910,797......................................................................................4

VI. CONSTRUCTION OF THE CLAIM TERMS AT ISSUE .......................................4

A. U.S. Patent No. 5,910,797......................................................................................4

1. “gravitation-controlled sensor” – Claims 1 and 6.......................................5

2. “programmed calculating means . . .” – Claims 1 and 6.............................8

I, Philip Greenspun, declare under the penalty of perjury as follows:

## I. INTRODUCTION

1. I have been retained by counsel for Plaintiffs Koninklijke Philips N.V. and U.S. Philips Corporation (collectively, "Philips") in this action. I submit this declaration in support of Philips' Opening Claim Construction Brief.

2. I currently reside at 10 Beaver Pond Road, Lincoln, Massachusetts 01773.

3. I have been asked to render opinions regarding the construction of certain terms in the asserted claims of U.S. Patent No. 5,910,797 ("the '797 patent").

4. I understand that the application which led to the '797 patent was filed on February 13, 1996 and claims foreign priority to EP 95200338, filed February 13, 1995.

5. I have personal knowledge of the facts set forth in this declaration and, if called to testify as a witness, would do so competently.

## II. QUALIFICATIONS

6. Exhibit A is a copy of my current *curriculum vitae*.

7. I earned my S.B. degree in mathematics from the Massachusetts Institute of Technology ("MIT") in 1982. I earned my S.M. degree in electrical engineering and computer science from MIT in 1993. I earned my Ph.D. degree in electrical engineering and computer science from MIT in 1999.

8. I have more than 30 years of experience in software development including the development of user interfaces. I have more than 10 years of experience designing electronic hardware and teaching electrical engineering.

9. Two examples of my experience in development of user interfaces from around the time of the filing date of the'797 patent include: (a) from 1997 through March 2000 I started and managed the ArsDigita Corporation, which developed an open-source toolkit for building

collaborative Internet applications; and (b) from 1993 through 2000 and from 2006 through 2007, I started, programmed, and managed photo.net, an online learning community relating to photography. Prior to my web development experience, I built graphical user interfaces for computer-aided design systems that supported civil, mechanical, and electrical engineers at workstations running window systems.

10. In the Software Engineering for Internet Applications course that I developed for M.I.T. students, project teams are required to build mobile device user interfaces to their web applications. I have supervised and critiqued these projects since roughly 2000. I am the co-author of *Software Engineering for Internet Applications*, published in hardcopy by MIT Press in 2006, but available earlier online. This book includes a chapter titled "Adding Mobile Users to Your Community," which explains to students how to facilitate access to a website from handheld mobile devices.

11. In the 1980s I participated in the design of handheld location devices for use in precision construction projects. *See* U.S. Patent 5,150,310, "Method and Apparatus for Position Detection." Also in the 1980s, I co-developed a digital audio recorder that included a mixture of digital and analog circuitry.

12. Over the course of my experience as software developer, I have personally designed and implemented hundreds of user interfaces.

## III. MATERIALS CONSIDERED

13. The materials I have considered in forming the opinions expressed in this declaration include the '797 patent itself, the prosecution file history of the '797 patent, and publications cited and/or incorporated by reference in the '797 patent.

## IV. LEGAL STANDARDS

14. I have been informed by counsel for Philips that the claims of a patent are

generally given the ordinary and customary meaning that the terms would have to a person of ordinary skill in the art at the time of the invention (hereinafter, a "POSA").

15. I further understand that intrinsic evidence (the claims themselves, the specification, and the prosecution history) is of primary importance to claim construction, but I also understand that extrinsic evidence (e.g., dictionary definitions, industry standards, etc.), while of lesser importance, can shed useful light on the appropriate claim construction.

16. I understand that, under 35 U.S.C. § 112, ¶ 6, an element in a claim may be expressed as a means or step for performing a specified function without recital of the structure, material, or acts in support thereof (i.e., a means-plus-function term).

17. I understand that, if a term contains the word "means," it creates a presumption that the term is to be construed under 35 U.S.C. § 112, ¶ 6, but I also understand that presumption is not a strong one, and can be rebutted when the words of the claim are understood by a POSA to have sufficiently definite meaning as the name for structure. I understand that this can be shown where the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function. Conversely, I understand that, if a term does not contain the word "means," it creates a presumption that the term is not to be construed under 35 U.S.C. § 112, ¶ 6, but I also understand that presumption can be rebutted if the claim fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function.

18. I understand that, if a term is to be construed under 35 U.S.C. § 112, ¶ 6 (i.e., it is a means-plus-function term), the term is construed to perform a certain function and to cover the corresponding structure described in the specification and equivalents that perform that function.

19. I understand that a claim term is indefinite under 35 U.S.C. § 112, ¶ 2 if, when read in light of the intrinsic evidence, a POSA would not understand the scope of the claim with reasonable certainty.

20. I understand that a means-plus-function claim is not indefinite if the specification describes a corresponding structure with sufficient definiteness. I also understand that, in cases involving a computer-implemented invention that is claimed using one or more means-plus-function claim terms, the specification must disclose an algorithm or other particular structure for performing the function. I further understand that the algorithm may be expressed in several ways, including such ways as a mathematical formula, prose, a flow chart, or in any other manner that provides sufficient structure.

## V. LEVEL OF ORDINARY SKILL IN THE ART

### A. U.S. Patent No. 5,910,797

21. I understand that patent claims are to be given their plain meaning, in light of the intrinsic evidence, to the person of ordinary skill in the art to which the patent is directed. The ’797 patent generally relates to a portable device capable of imparting acceleration based motion patterns to objects on an integrated screen based on user manipulation of the device. Based on my background and experience, I am a person of at least ordinary skill in the art to which the ’797 patent is directed.

## VI. CONSTRUCTION OF THE CLAIM TERMS AT ISSUE

### A. U.S. Patent No. 5,910,797

22. I have been informed that Philips is asserting Claims 1 and 6 of the ’797 patent in the present matter, and that the parties dispute the meaning of certain terms of those claims.

23. I have been asked to provide my opinion as to how a POSA as of the filing date of

the ’797 patent would have understood certain language in the asserted claims of the ‘797 patent. In particular, I have been asked to provide my opinion as to how the following disputed claim terms would be interpreted by a POSA:

### 1. **<u>“gravitation-controlled sensor” – Claims 1 and 6</u>**

| **Term** | **Philips’ Proposed Construction** | **Defendants’ Proposed Construction** |
|---|---|---|
| gravitation-controlled sensor | gravitation-controlled sensor that measures acceleration | sensor responsive to gravity |

24. The term “gravitation-controlled sensor” appears in Claims 1 and 6 of the ’797 patent. I understand that Philips contends that this term should be construed as “gravitation-controlled sensor that measures acceleration.” For the reasons discussed below, I agree with Philips.

25. To begin with, a POSA would have readily appreciated, from the claim language itself and the specification, that claim 1 of the ’797 patent, as issued, contained an informality or error pertinent to the construction of this term, namely that the term “gravitation-controlled sensor” should be read to mean “gravitation-controlled sensor [***means***].”

26. Specifically, a POSA would recognize that there is no exact antecedent basis for the term “said sensing means” in claim 1 or the term “said gravitation-controlled sensor means” in claim 3. But, taken together, a POSA would readily understand that the words “said sensing means” in Claim 1 and “said gravitation-controlled sensor means” in Claim 3 both refer to the same element: namely the “gravitation-controlled sensor” of claim 1.

27. A POSA would therefore readily appreciate that despite the minor differences in terminology, the “gravitation-controlled sensor” of claim 1 provides antecedent basis for both the subsequent references to “sensing means” and “gravitation-controlled sensor means.” This is apparent from the fact that both terms use a form of the word “sense,” and the fact that there is

no other possible source of antecedent basis for "said sensing means" or "said gravitation-controlled sensor means" in the claims.

28. A POSA would understand that these differences in terminology and informalities in antecedent basis are easily reconciled by reading the "gravitation-controlled sensor" of Claim 1 as "gravitation-controlled sensor [***means***]."

29. My understanding is also supported by the specification of the '797 patent. Specifically, the term "gravitation-controlled sensor" appears only once and the only time is as part of the larger term "gravitation-controlled sensor ***means***" at Col. 1, lines 7-13 of the '797 specification: "The invention relates to a portable apparatus having data processing means and integrated screen means for displaying one or more graphical or other objects presented by said data processing means, said screen means having **gravitation-controlled sensor *means*** feeding said data processing means for measuring a spatial orientation of said screen means." (emphasis added). From this language in the specification, a POSA would also know that reference to "gravitation-controlled sensor" in claim 1 should be read and understood as synonymous with "gravitation-controlled sensor [***means***]."

30. I have been informed by counsel that the term "gravitation-controlled sensor [means]" would presumptively be subject to 35 U.S.C. § 112, ¶ 6. I also understand that the presumption that a term including the word "means" is subject to 35 U.S.C. § 112, ¶ 6 is not a strong one and is rebutted when the words of the claim are understood by a POSA to have sufficiently definite meaning as the name for structure. In my opinion, a POSA would understand that the phrase "gravitation controlled sensor [means]," when read in view of the claims of '797 patent, is a sufficiently definite recitation of the name for well recognized structure, in particular that it refers to a class of sensors. Specifically, a POSA would understand

this phrase to refer to a class of gravitation-controlled sensors that measure acceleration, which further defines the particular structure named by this claim term.

31. The parties also dispute whether the gravitation-controlled sensor must measure acceleration. Philips' construction is plainly supported on the face of Claim 1, which requires that the gravitation-controlled sensor "measur[es] an acceleration":

> . . . ***a gravitation-controlled sensor*** integrated with said screen means and feeding said data processing means ***for measuring an acceleration*** of said screen means induced by user manipulation of the screen means . . .

('797 at Claim 1 (emphasis added).) This construction is also in agreement with the prosecution history, as Philips amended the claims during prosecution to add the limitation "for measuring an acceleration," and distinguished prior art, stating that "while [the prior art's] sensor can measure tilt by measuring the angle of rotation . . . it <u>cannot measure acceleration</u> as do the sensors in the present invention." (*See* '797 FH 1997/05/22 Amendment and Remarks at 2, 4.)

32. Therefore, in my view, a POSA would readily understand that the term "gravitation-controlled sensor" as used in Claim 1 must measure acceleration, and I agree with Philips' construction.

### 2. <u>"programmed calculating means . . ." – Claims 1 and 6</u>

| Term | Philips' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| programmed calculating means for under control of a screen motion sensed by said sensing means imparting an acceleration based motion pattern to a predetermined selection among said objects | Subject to 35 U.S.C. § 112, ¶ 6.<br><br><u>Function:</u><br>receiving screen motion information and imparting an acceleration based motion pattern to one or more or all displayed objects<br><br><u>Structure:</u><br>a computer program that performs an algorithm for imparting an acceleration based motion pattern, such as those disclosed in Figs. 3-5 and at 3:32-4:39. | Means plus function.<br><br>Function: imparting an acceleration based motion pattern to a predetermined selection among said objects<br><br>No adequate corresponding structure disclosed in the specification |

33. The term "programmed calculating means for under control of a screen motion sensed by said sensing means imparting an acceleration based motion pattern to a predetermined selection among said objects" appears in Claims 1 and 7 of the '797 patent. I understand that the parties agree that this term should be construed as a means-plus-function claim term.

34. I understand that the parties disagree about the function performed by this term, and I further understand that Philips contends that the function of this term is "receiving screen motion information and imparting an acceleration based motion pattern to one or more or all displayed objects." I agree with Philips' identification of the function because it acknowledges that the programmed calculating means must "receiv[e] screen motion information," which is required by the subsequent claim language "under control of a screen motion sensed by said sensing means." ('797 at Claim 1.) Defendants' identification of the function ignores this portion of the claim term. Additionally, Philips' identification of the function also clarifies that one or more or all of the objects may be displayed, as is disclosed in the specification at column 1, lines 54-56. In either case, however, my opinion provided below regarding the disclosed structure would not substantively change under Defendants' proposed function.

35. I also understand that the parties disagree about the structure for performing the function of this claim term, and I further understand that Philips contends that the structure for this term is "a computer program that performs an algorithm for imparting an acceleration based motion pattern," such as those disclosed in Figures 3-5 and at column 3, line 32 to column 4, line 39 of the '797 specification. For the reasons discussed below, I agree with Philips.

36. It is my opinion that the '797 patent describes to a POSA adequate corresponding structure that performs the disclosed function. Specifically, the '797 patent describes a computer program that "receiv[es] screen motion information" as an input and "impart[s] an acceleration based motion pattern to one or more or all displayed objects" as an output. The specification discloses at least two different sets of algorithms which explain how the computer program generates the acceleration based motion pattern from the screen motion information, including the algorithms shown by Figure 3 (which dictate the shape of the motion pattern) and Figure 4 (which dictate the characteristics of the acceleration based motion pattern).

37. In particular, Figure 4 and its corresponding description disclose a variety of relevant algorithms, in the form of mathematical formulae, referred to in the specification as "various motion characteristics realizable with the invention." ('797 patent at Fig. 4, 4:1-2.) In my opinion, the algorithms disclosed in Figure 4 sufficiently disclose to a POSA how the computer program should use the "screen motion information" (such as the screen's inclination angle) to generate the magnitude or "pseudo force" of the acceleration based motion pattern imparted on the displayed objects. For example, Figure 4 discloses algorithms corresponding to a variety of motion characteristics, including generating a "constant acceleration" from the screen motion information (**64**), generating a constant force from screen motion information indicating the device has reached a "threshold angle" (**60**), and generating a force that "attains an

asymptote" from the screen motion information (**62**). (*Id.* at Fig. 4, 4:1-14). Furthermore, a POSA would also readily appreciate from Figure 4 that other ways of generating a force/acceleration from the screen motion information are possible.

38. Figure 3 and its corresponding description similarly disclose a variety of relevant algorithms, by way of descriptive prose, referred to in the specification as "various motion pattern shapes realizable with the invention." (*Id.* at Fig. 3, 3:32-33.) In my opinion, the algorithms disclosed in Figure 3 sufficiently disclose to a POSA the various actual forms that the "motion pattern" imparted to the displayed objects may take. For example, Figure 3 discloses algorithms corresponding to a variety of motion pattern forms, and the specification expressly discloses that "[t]he object during motion may rotate and be displayed in the form of a wheel or the like" and that "[t]he motion may be controlled along non-straight trajectories, such as parabolas, or may comprise oscillating or rotary motion or motion components." (*Id.* at Fig. 3, 3:57-61.) Furthermore, a POSA would also readily appreciate from Figure 3 that it is possible to impart other motion pattern shapes to the displayed objects.

39. In my opinion, based on the algorithms in Figures 3 and 4, a POSA would readily understand how to a write a computer program that would implement the claimed programmed calculating means for "receiving screen motion information and imparting an acceleration based motion pattern to one or more or all displayed objects," and therefore I agree with Philips' construction.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 3/3/2017

Philip Greenspun, Ph.D.